[No. D045507. Fourth Dist., Div. One. Sept. 21, 2005.]

COLMORE RINEHART IV, a Minor, etc., Plaintiff and Appellant, v. BOYS & GIRLS CLUB OF CHULA VISTA, Defendant and Respondent.

422

**COUNSEL**

Hiney & Trestick, Donald D. Hiney and Michael L. Trestick for Plaintiff and Appellant.

Brack & Mason, Lindsay R. Brack and Susan L. Mason for Defendant and Respondent.

**OPINION**

**HUFFMAN, J.**—Plaintiff Colmore Rinehart IV, a minor, by and through his guardian ad litem Angela Combs, appeals from a judgment entered against him and in favor of the defendant Boys and Girls Club of Chula Vista (BGCCV or Club), after the trial court granted BGCCV's motion for summary judgment on plaintiff's amended complaint alleging personal injury based on both premises liability and negligence. Plaintiff essentially claimed that BGCCV was responsible for Rinehart's head injuries resulting from a rock thrown by a nonmember of the Club from a hillside to the playground below because BGCCV "violated applicable laws and regulations in numerous ways by negligently failing to protect and ensure [his] safety . . . , failing to provide adequate supervision, and failing to enforce the rules and regulations necessary for his safety."

Plaintiff contends the trial court erred in granting BGCCV's summary judgment motion because it found there were no disputed material facts as to the supervision on the Club's playground at the time of the incident, incorrectly categorized the incident as a "criminal act" thereby improperly utilizing the third party criminal assault duty analysis of *Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666 [25 Cal.Rptr.2d 137, 863 P.2d 207] (*Ann M.*) to find the incident was not foreseeable, and incorrectly utilized the reasoning of *Noble v. Los Angeles Dodgers, Inc.* (1985) 168 Cal.App.3d 912 [214 Cal.Rptr. 395, 214 Cal.Rptr. 396] (*Noble*) as determinative of causation rather than applying the body of law pertinent to public school supervision cases. We affirm.

FACTUAL AND PROCEDURAL SUMMARY

The unverified first amended complaint filed January 16, 2004, against BGCCV alleged it owned and operated an "after school program" in Chula

Vista, California. On information and belief, Rinehart alleged in the first cause of action for premises liability that he was enrolled in BGCCV's program on April 9, 2002, and that "[a] group of boys had been throwing sticks and rocks at children on the playground for a period of five to ten minutes when [he] was struck in the head with a rock thrown at him by a boy standing on the hill in the playground area of [BGCCV's] property. There were no supervisors on the playground area at the time of the incident. [BGCCV was] in a loco parentis relationship with [Rinehart] thereby owing him a higher duty of care. Had a supervisor been on duty and on the playground, the injury to [Rinehart] would not have occurred."

In his second cause of action for general negligence, Rinehart essentially re-alleged the above and added allegations he was 10 years old at the time of the rock-throwing incident which occurred while he was playing on the playground at the rear of BGCCV's facility and that such caused him serious injuries. He further alleged BGCCV was "an operator of a licensed daycare program for minor children. As such, it is required to abide by certain statutory regulations including the California Code of Regulations, Health & Safety Code and Welfare & Institutions Code." He also alleged "that had the facility been adequately staffed and a supervisor present at the time, the incident would not have occurred and [he] would not have sustained injury. [BGCCV] violated applicable laws and regulations in numerous ways by negligently failing to protect and ensure [his] safety . . . , failing to provide adequate supervision, and failing to enforce the rules and regulations necessary for his safety." Rinehart alleged the failure to have a supervisor present on the playground was a breach of BGCCV's duty of care and that as a result of such breach or negligence BGCCV caused him to sustain serious injuries.

BGCCV moved for summary judgment, arguing there were no triable issues of material fact regarding foreseeability and causation and that without Rinehart being able to establish such elements, neither of his causes of action against BGCCV could be proven. BGCCV also argued that even if it had owed a duty to Rinehart and had breached that duty, Rinehart could not prevail on either cause of action because he cannot show the breach "bore a causal connection to his injury." BGCCV claimed it was entitled to judgment as a matter of law because the acts of Rinehart's assailant were unforeseeable and he could not establish BGCCV's alleged negligence was an actual, legal cause of his injuries.

Declarations and discovery submitted in support of the motion revealed that BGCCV "is a non-profit organization which offers after school recreation programs to boys and girls who may otherwise be unsupervised" and that Rinehart was enrolled in such a program at BGCCV from April 2000 through April 2002. The Club's playground area was located at the base of a hill just

below Greg Rodgers Park, a public park with baseball fields. A fence ran across the top of the hill, dividing the area into the park on one side and the hill and the Club on the other. The City of Chula Vista leased the hill adjacent to the playground to BGCCV. Club members were not allowed to play on the hill. The Club also had rules that members were not to throw sand or objects outside.

On April 9, 2002, Rinehart was struck in the head with a rock which a young unidentified male on the hill next to the Club's playground area had thrown at him as he was playing outside on the Club playground. Before the incident, Rinehart had seen non-Club members walk across the top of the hill, but he had never seen any nonmember stop while on the hill or throw rocks from the hill. Rinehart's sister, who also was a Club member, had seen nonmembers "go through the . . . fence in the back" to hang out with their member friends, but had never seen anybody throw rocks. Although Rinehart had seen some members throwing rocks about five times before the incident, a supervisor had told them to stop, and they had not thrown the rocks from the hill or at another person.

On the afternoon of the incident, Rinehart was outside playing cards and talking with some friends as they sat in tires that had been placed on the Club's playground. At some point, Rinehart noticed two or three rocks come down the hill. When he looked up he saw two boys about 14 years old near the top of the hill throwing rocks. Rinehart told his friends the boys were throwing rocks and that they should move. As Rinehart stood up and began to move his tire he was hit by a rock and fell. Rinehart did not remember the rock-throwing boys or his friends saying anything either before or after he was hit. Rinehart believed the boys had thrown a total of four rocks, including the one that hit him, and a log-type object that landed in the bushes. Although Rinehart believed he had seen his assailant before the incident at the baseball field above the Club and that he would be able to identify him if he saw him again, he had never seen him again.

Neither John Clingan, the president and chief executive officer (CEO) of BGCCV, nor employees Henry Steven Cross (Henry) or Briana Joy Baker had ever seen nonmembers throw rocks from the hill. Although Rinehart and his sister do not recall seeing a supervisor in the playground area the day of the incident, Baker testified she was in the vicinity of the sidewalk near the playground, possibly playing a game with some girls, when she saw Rinehart and his friends on the tires playing in the sand. Henry confirmed that Baker had been assigned to supervise the outdoor activities on the playground that afternoon and that from the sidewalk vicinity she would have had an unobstructed view of Rinehart and his friends. Approximately five to 10 minutes before the incident, Baker had walked around the playground to make sure

there were no children behind some trailers on the Club's property or up on the hill, and to "make sure that everyone [was] playing fair and well with each other." Baker did not see any boys on the hill, on the baseball field, or near the fence, or hear anyone yell before she saw Rinehart lying on the ground after he was hit and she ran over to him. No one had come to Baker to report any rock throwing on the hill before Rinehart was hit with the rock and his assailant fled. The boy who threw the rocks was never apprehended and his identity is unknown.

An incident report prepared by employee Sally Cross (Sally) indicated Baker was outside at the time of the accident, and noted Baker had stated she had not seen or heard anything. The report also noted that two of the boys with Rinehart at the time of the incident told Sally "there were some big boys on top of the hill and they were hiding behind the bushes and one came out and threw the rock and took off running."

Rinehart opposed the summary judgment motion, claiming BGCCV had a duty to supervise its facility to provide a safe place for him "to learn and grow with supervision" as promoted in its rules and regulations and that its failure to adequately do so caused his injuries. In support of these claims, Rinehart submitted copies of the Club's policy and procedure manual, representations made by the Club in its advertising and membership information form, excerpts of depositions and the declaration of Alison Vredenburgh, Ph.D., CPE, a retained "human factors and safety expert."

In her declaration, Vredenburgh stated she had read all the depositions taken in this case, had conducted a site inspection of the Club's property, had read all the policy and procedure manuals before concluding the rock-throwing incident was foreseeable and BGCCV had "failed to provide adequate and effective barriers, both physical and administrative, to prevent the subject incident." Vredenburgh opined that the physical presence of a supervisor would have served as a deterrent to aggressive behavior of both members of the Club and nonmembers and that BGCCV failed to provide continual supervision as required by its own stated policies and by state law regulating child care facilities. She also provided photographs she had taken of the premises, noting the fence did not fully enclose the Club's property as testified to by Clingan.

BGCCV filed reply documents, raising evidentiary objections to statements in Rinehart's separate statement and points and authorities, and to Vredenburgh's declaration. The Club also filed a portion of Baker's deposition stating there were no holes in the fence at the time of the incident like those depicted in Vredenburgh's photos which were take two years after the incident.

On September 2, 2004, the court issued a tentative ruling granting BGCCV's summary judgment motion, finding "[t]he incident was too unforeseeable to impose a duty on the Club to take affirmative measures to prevent non-members from throwing rocks from the hill, and there is no evidence that the Club's actions were a substantial factor in causing plaintiff's injuries." In doing so, the court relied upon the law in *Ann M., supra,* 6 Cal.4th 666 with regard to the issues of duty and foreseeability, stating: " 'A duty to take affirmative action to control the wrongful acts of a third party will be imposed only where such conduct can be reasonably anticipated.' . . . [¶] 'In this, as in other areas of tort law, foreseeability is a crucial factor in determining the existence of duty.' [Citing *Ann M., supra,* 6 Cal.4th at p. 676.] . . . [¶] Based on the evidence presented, plaintiff cannot show the rock-throwing incident was foreseeable such that the Club owed a duty to take measures to prevent such incidents. In general, the greater the burden of imposing a duty, the greater the level of foreseeability is required. [Citation.] The requisite degree of foreseeability can rarely be proven in the absence of prior similar incidents. [Citation.] Here, there is no evidence that the Club should have been aware that nonmembers would enter the property and throw rocks. While there is some evidence that nonmembers traversed the hill, nobody stopped and threw objects towards the playground. The few rock-throwing incidents that occurred were by members on the playground. The Club has rules prohibiting rock-throwing, and a supervisor acted to stop such conduct when it occurred."

Regarding the issue of causation, the court relied on *Noble, supra,* 168 Cal.App.3d 912, *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763 [107 Cal.Rptr.2d 617, 23 P.3d 1143] (*Saelzler*), and *Thompson v. Sacramento City Unified School Dist.* (2003) 107 Cal.App.4th 1352 [132 Cal.Rptr.2d 748] (*Thompson*) to find that Rinehart had not raised a triable issue of fact regarding this element of his causes of action. The court specifically stated: "Plaintiff's contention that the incident might not have occurred had the Club placed more supervisors on the playground or repaired the fence is speculative. Plaintiff's argument is similar to that in [*Noble, supra,* 168 Cal.App.3d 912] where the plaintiff was injured in a post-game altercation in the parking lot of the Dodger's Stadium. Plaintiffs' theory in that case was 'purely and simply that the Dodgers were negligent in failing to effectively deter any and everyone from acting in such a manner.' [Citation.] The court rejected a security expert's opinion that there should have been seven more individuals employed by the Dodgers for security purposes and that the personnel should have been deployed differently than they were. The court noted the expert could not say that the additional seven persons or a different deployment pattern would have prevented the plaintiff's injury. [¶] Here, plaintiff's safety expert, Dr. Vredenburgh[,] opines the Club failed to provide adequate physical and administrative barriers to prevent the incident. She states the fence

and supervisors were inadequate and ineffective, but does not specifically indicate what the Club could have done to prevent the incident from occurring. She suggests the presence of a supervisor would serve as a deterrent to aggressive behavior by members and non-members, but there was a supervisor on the playground (Ms. Baker). Plaintiff cannot say that additional supervisors or a better fence would likely have deterred the unknown person from throwing rocks. One is left to guess how many additional supervisors would have been needed. Further, the fence borders a public park and it is just as possible that the assailant would have thrown rocks from over the fence if he could not walk across the hill."

The court sustained BGCCV's objections to Vredenburgh's declaration, but declined to rule on objections to statements in Rinehart's pleadings stating such were not evidence.

Following oral argument on September 3, 2004, the tentative ruling became the order of the court and a formal written order granting BGCCV's summary judgment motion and judgment in its favor was filed September 20, 2004. Notice of entry of judgment in BGCCV's favor was filed September 23, 2004, and this appeal followed.

## DISCUSSION

■ Because plaintiff appeals from the judgment entered after the trial court granted BGCCV's summary judgment motion, we review the court's ruling on the motion de novo. (*Lunardi v. Great-West Life Assurance Co.* (1995) 37 Cal.App.4th 807, 819 [44 Cal.Rptr.2d 56].) In doing so we "apply the same rules and standards that govern a trial court's determination of a motion for summary judgment. [Citation.]" (*Distefano v. Forester* (2001) 85 Cal.App.4th 1249, 1258 [102 Cal.Rptr.2d 813].) ■ Summary judgment should be granted if "all the papers submitted show that there is no triable issue [of] material fact and . . . the moving party is entitled to . . . judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).)

■ To satisfy this burden, a moving defendant is not required to "conclusively negate an element of the plaintiff's cause of action. . . . All that the defendant need do is to 'show[] that one or more elements of the cause of action . . . cannot be established' by the plaintiff. [Citation.]" (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853 [107 Cal.Rptr.2d 841, 24 P.3d 493] (*Aguilar*).) Once this defendant's burden is met, the "burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists. . . ." (Code Civ. Proc., § 437c, subd. (p)(2).) In opposing the motion, "[t]he plaintiff . . . may not rely upon the mere allegations or denials of its pleadings to show that a triable issue of material fact exists but, instead, shall

set forth the specific facts showing that a triable issue of material fact exists . . . ." (*Ibid.*; see *Brundage v. Hahn* (1997) 57 Cal.App.4th 228, 234 [66 Cal.Rptr.2d 830].)

■ In performing our de novo review, we view the evidence in the light most favorable to the plaintiff, liberally construing the plaintiff's submissions while strictly scrutinizing the defendant's showing, and resolving any evidentiary doubts or ambiguities in the plaintiff's favor. (*Saelzler, supra,* 25 Cal.4th at p. 768.) We are not bound by the trial court's stated reasons for its ruling on the motion, as we only review the ruling and not its rationale. (*Muller v. Automobile Club of So. California* (1998) 61 Cal.App.4th 431, 438–439 [71 Cal.Rptr.2d 573]; disapproved on another point in *Colmenares v. Braemar Country Club, Inc.* (2003) 29 Cal.4th 1019, 1031, fn. 6 [130 Cal.Rptr.2d 662, 63 P.3d 220].) "Summary judgment will be upheld when, viewed in such a light, the evidentiary submissions conclusively negate a necessary element of plaintiff's cause of action, or show that under no hypothesis is there a material issue of fact requiring the process of a trial, thus defendant is entitled to judgment as a matter of law. [Citation.]" (*Thompson, supra,* 107 Cal.App.4th at pp. 1360–1361.)

Here, Rinehart's position on appeal is that there are disputed material facts as to the presence and level of supervision of the playground of BGCCV at the time of the incident which are critical to his actions against the Club. He claims the court erred in finding it was undisputed there was a supervisor on the playground when he and his sister testified they did not see one there that afternoon. Rinehart further claims the trial court improperly utilized the duty and foreseeability analysis of *Ann M., supra,* 6 Cal.4th 666 because the incident was not a "criminal act," and failed to use the law applicable to the special relationship between a school district and its students which requires a duty to supervise at all times because BGCCV's stated policies essentially had created such relationship with its members. Rinehart argues that because it was foreseeable an inadequately supervised playground area by BGCCV combined with easy access to the area by nonmembers "would permit those non-members to endanger the safety of its members," BGCCV had a duty under the school district supervision cases to adequately supervise its members and facility on the day of the incident.

In addition, Rinehart contends the Club's breach of its duty to exercise due care in its supervision on its premises proximately caused his injuries under the rational of the school district cases and that the court erred in utilizing the reasoning of *Noble, supra,* 168 Cal.App.3d 912, *Saelzler, supra,* 25 Cal.4th 763, and *Thompson, supra,* 107 Cal.App.4th 1352 to determine the absence of causation.

As BGCCV points out in its respondent's brief, Rinehart fails to appreciate that even assuming it owed and breached a duty of care to him, he has not, and cannot show that the harm was reasonably foreseeable because the actions of the rock thrower were clearly criminal, and even if those actions were only negligent, he cannot show additional supervision would have prevented the incident. As we explain, the trial court correctly determined upon the competent evidence presented in this case that, similar to the situations presented in *Noble, supra,* 166 Cal.App.3d 912 and *Saelzler, supra,* 25 Cal.4th 763, Rinehart could not establish the causation element of his causes of action based on principles of negligence and premises liability, and accordingly, properly granted BGCCV summary judgment.

I

PERTINENT GENERAL PRINCIPLES

■ It is well established that to succeed on a claim based on negligence, it must be shown "that the defendant owed the plaintiff a legal duty, that the defendant breached the duty, and that the breach was a proximate or legal cause of injuries suffered by the plaintiff. [Citations.]" (*Ann M., supra,* 6 Cal.4th 666, 673.) "In the case of a landowner's liability for injuries to persons on the property, the determination of whether a duty exists, 'involves the balancing of a number of considerations; the major ones are the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and the consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.' [Citations.]" (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1145 [12 Cal.Rptr.3d 615, 88 P.3d 517] (*Wiener*).)

■ When, as here "children are the focus of care, the landlord's duty is to protect the young from themselves and guard against perils that are reasonably foreseeable. [Citation.] 'The determination of the scope of foreseeable perils to children must take into consideration the known propensity for children to intermeddle.' [Citation.] The existence of a duty and foreseeability, when analyzed to determine the scope of a duty, is a question of law that an appellate court will determine de novo. [Citation.]" (*Wiener, supra,* 32 Cal.4th at pp. 1145–1146.)

■ Generally, "landowners [are required by law] to maintain land in their possession and control in a reasonably safe condition. [Citations.] In the case

of a landlord, this general duty of maintenance, which is owed to tenants and patrons, has been held to include the duty to take reasonable steps to secure common areas against foreseeable criminal acts of third parties that are likely to occur in the absence of such precautionary measures. [Citations.]" (*Ann M., supra*, 6 Cal.4th at p. 674.) However, "a duty to take affirmative action to control the wrongful acts of a third party will be imposed only where such conduct can be reasonably anticipated." (*Id.* at p. 676.)

■ Our Supreme Court has reevaluated the scope of a landowner's duty to protect persons from random criminal conduct several times in the recent past. In general, the court has stressed the necessity of balancing the foreseeability of the harm against the burden of the duty to be imposed. Where the burden of prevention is great, a high degree of foreseeability is usually required; whereas where there are strong public policy reasons for preventing the harm, or the harm can be prevented by simple means, a lesser degree of foreseeability may be required. (*Ann. M., supra*, 6 Cal.4th at pp. 678–679.) Thus, duty is determined by balancing the foreseeability of the criminal acts against the " 'burdensomeness, vagueness, and efficacy' " of the proposed security measures, or as here, the supervision measures. (*Id.* at p. 679.)

■ Although the Supreme Court has observed that "random, violent crime is endemic in today's society[, and i]t is difficult, if not impossible, to envision any locale open to the public where the occurrence of violent crime seems improbable" (*Ann M., supra*, 6 Cal.4th at p. 678), the court has also reiterated that landowners are not insurers of public safety and will have no duty to provide highly burdensome measures of protection absent a showing of a high degree of foreseeability of the particular type of harm, which normally requires evidence of prior similar incidents of violent crime on the premises. (*Id.* at pp. 677–679.) In other words, "[t]he dispositive issue remains the foreseeability of the criminal act. Absent foreseeability of the particular criminal conduct, there is no duty to protect the plaintiff from that particular type of harm." (*Alvarez v. Jacmar Pacific Pizza Corp.* (2002) 100 Cal.App.4th 1190, 1212 [122 Cal.Rptr.2d 890].)

For example, in holding that a violent attack in an underground parking garage was not sufficiently foreseeable to support a requirement that the owner of the garage secure the parking garage area against that crime, our Supreme Court in *Sharon P. v. Arman, Ltd.* (1999) 21 Cal.4th 1181 [91 Cal.Rptr.2d 35, 989 P.2d 121] (disapproved on another ground in *Aguilar, supra*, 25 Cal.4th at p. 853, fn. 19) stated, "It is difficult to quarrel with the abstract proposition that the provision of improved lighting and maintenance, operational surveillance cameras and periodic walk-throughs of the tenant garage owned and operated by defendants might have diminished the risk of

criminal attacks occurring in the garage. But absent any prior similar incidents or other indications of a reasonably foreseeable risk of violent criminal assaults in that location, we cannot conclude defendants were required to secure the area against such crime." (*Sharon P., supra,* at p. 1199.)

In addition, in *Saelzler,* our Supreme Court held, in the context of evaluating causation where duty had been conceded, that an apartment owner who had provided nighttime security guards in a large complex with a history of serious violent crime would not be liable for its failure to provided daytime security guards and failure to maintain functioning locked gates without an actual causal link showing that the additional security measures would have prevented the assault on the plaintiff. (*Saelzler, supra,* 25 Cal.4th at pp. 770, 775–777.) The court found the plaintiff's argument that increased security might have prevented the harm was speculative, observing that crime can occur despite the highest level of security. (*Id.* at p. 777.) The court recognized its decision requires the balancing of two important and competing concerns: "society's interest in compensating persons injured by another's negligent acts, and its reluctance to impose unrealistic financial burdens on property owners conducting legitimate business enterprises on their premises." (*Id.* at p. 766.)

 The court in *Saelzler, supra,* 25 Cal.4th 763, in holding that a "plaintiff must establish, by nonspeculative evidence, some actual causal link between the plaintiff's injury and the defendant's failure to provide adequate security measures [citations]" (*id.* at p. 774), relied upon and cited *Noble, supra,* 168 Cal.App.3d 912 with approval, as well as several other Court of Appeal cases. (*Saelzler, supra,* 25 Cal.4th at pp. 773–775.) It also relied upon the Restatement Second of Torts, hornbook law and additional cases to support its conclusion a plaintiff must show that a defendant's act or omission was a "substantial factor" in bringing about the injury, that the "mere possibility of such causation is not enough," and a plaintiff must show that more likely than not defendant's conduct was cause in fact of the result. (*Saelzler, supra,* at pp. 775–778.) The bottom line for the court in *Saelzler* was that "[n]o matter how inexcusable a defendant's act or omission might appear, the plaintiff must nonetheless show the act or omission caused, or substantially contributed to, [his or] her injury." (*Id.* at p. 780.)

Further, in *Thompson, supra,* 107 Cal.App.4th 1352, where a high school student had brought a negligence action against a school district for injuries he sustained when he was attacked by another student, the court, relying on the reasoning of *Saelzler, supra,* 25 Cal.4th 763, regarding the issue of causation, found the injured student had failed to establish the allegedly negligent supervision proximately caused his injuries. (*Thompson, supra,* at pp. 1371–1373.) The court in *Thompson* acknowledged that the school

district, while not considered the insurer of the physical safety of students, had a legal duty imposed on it under California law to " ' "supervise at all times the conduct of the children on the school grounds and to enforce those rules and regulations necessary to their protection," ' " and thus, " '[e]ither a total lack of supervision [citation] or ineffective supervision [citation] may constitute a lack of ordinary care on the part of those responsible for student supervision.' [Citation.]" (*Id.* at p. 1370.) The court found that in such situations "[w]hen an injury occurs despite a defendant's efforts to provide security or supervision . . . [f]or analysis purposes, courts assume duty and breach and focus upon causation." (*Ibid.*)

▮ Turning to the causation issue, the court in *Thompson, supra,* 107 Cal.App.4th 1352 noted a student was not exempt from proving the traditional elements of actionable negligence, including causation, and relied on the same cases cited by our high court in *Saelzler, supra,* 25 Cal.4th 763, to emphasize that "[t]o establish [the element of] causation, plaintiff must demonstrate that a particular omission caused the injury." (*Thompson, supra,* at p. 1370.) The court found that the plaintiff there had not supported his claim of ineffective supervision by competent proof of causation because the declarations of his experts merely criticized the defendant's security measures and handling of the matter, and opined that the plaintiff would not have been attacked if there had been effective supervision or intervention. (*Id.* at pp. 1372–1373.) "[W]hile expert criticism of the defendant's security measures may establish abstract negligence, an expert's speculative and conjectural conclusion that different measures might have prevented an injury cannot be relied upon to establish causation. [Citations.]" (*Id.* at p. 1373.)

## II

## ANALYSIS

Guided by the above principles, we turn to the evidence in this case after making several preliminary observations. According to the membership information form which BGCCV had all member families review and sign before a child was granted membership at the Club, BGCCV was not, as claimed by Rinehart, a licensed child care agency as defined by the California Education Code. Although BGCCV would appear to have a duty to Rinehart as a minor due to his membership via its representations in advertising and manuals to provide him and other children a safe place to be after school with a certain amount of supervision, such relationship and duty does not by itself create liability. (See *Rodriguez v. Inglewood Unified School Dist.* (1986) 186 Cal.App.3d 707, 723 [230 Cal.Rptr. 823].) Nor, as Rinehart contends, do the public school district supervision cases which base tort liability for governmental entities upon statute and constitutional principals generally apply.

(*Hoff v. Vacaville Unified School Dist.* (1998) 19 Cal.4th 925, 932 [80 Cal.Rptr.2d 811, 968 P.2d 522]; *Ramirez v. Long Beach Unified School Dist.* (2002) 105 Cal.App.4th 182, 188 [129 Cal.Rptr.2d 128].) Rather we review the matter, as the trial court did, under *Ann M., supra,* 6 Cal.4th 666 as it relates to BGCCV, the landowner here.

Contrary to Rinehart's characterization of the rock throwing, the conduct of the rock thrower, a nonmember, who tossed rocks at Rinehart and his friends from the top of the hillside, was clearly criminal, constituting both assaults and a battery. (Pen. Code, §§ 240, 242.) However, even if there is some speculative basis for finding the rock thrower was merely negligent, i.e., the act of throwing rocks and other objects at Rinehart and his friends was not intentional, the evidence presented by BGCCV showed the harm was not reasonably foreseeable.

As noted *ante,* the undisputed evidence showed that BGCCV was only aware of several rock-throwing incidents on the playground by members of the Club who had tossed stones at the basketball hoop or some other object before the incident involving Rinehart. The evidence also showed that nonmembers sometimes walked across the top of the hill above the play-ground area or had been admitted to the Club as guests of members. Rinehart's sister had seen some nonmembers go through a fence in the back of the playground before the rock assault. These incidents, however, did not indicate any prior "similar" incidents of serious assaultive conduct with rocks or other objects which were thrown by a member or nonmember at another child on the playground, or incidents when anything had ever "rolled" down the hill at the children on the playground in a similar fashion as the rocks and logs in this case. No Club employee or the Club's owner/CEO had any knowledge of injuries suffered from rock-throwing incidents of any type before the incident in this case. Nor had any Club staff or supervisor seen any nonmember roll or toss anything from the hillside onto the playground or at the children there. Based on the above evidence considered in light of recent holdings regarding a landowner's duties in the context of current societal conditions, and balancing the burden of requiring BGCCV to have additional supervisors on the playground to watch the children and inspect the fence and property for possible nonmembers, we find that the prior incidents of rock tossing by members on the playground and of nonmembers walking across the top of the hill above the playground did not make the foreseeability of a rock-throwing incident by nonmembers sufficiently high for purposes of imposing a duty on the Club to have taken such additional protective and supervisory measures against future third party crime before Rinehart in-curred his injuries.

In other words, even though BGCCV had a duty via its rules and regulations to maintain its playground area in a reasonably safe condition and

to provide a supervisor on the playground, absent any evidence of any prior similar acts of rocks and logs coming down the hill at children playing on the Club's playground, either intentionally or negligently, there would generally be no duty on the Club's part to take action to control nonmembers on the hill from throwing rocks or objects when such conduct could not reasonably be anticipated. (See *Ann M., supra,* 6 Cal.4th at pp. 674–676.)

However, even assuming such conduct was foreseeable and BGCCV breached its duty to effectively supervise members and nonmembers on its property, or failed to keep its fence repaired, Rinehart has not shown that additional supervision or more effective supervision and upkeep of the Club's fence would have prevented the incident. Similar to the situations in *Saelzler* and *Thompson* where the plaintiffs relied on the declarations of an expert, the declaration of Rinehart's safety expert merely opines additional supervisors on the playground and a better fence would have prevented the incident. (*Saelzler, supra,* 25 Cal.4th at pp. 776–777; *Thompson, supra,* 107 Cal.App.4th at p. 1373.) Because BGCCV does not have a statutory duty to have one-on-one supervision at all times, it is pure speculation that a supervisor closer to where Rinehart was on the playground or who made rounds of the playground or the fenced property more frequently would have prevented what appears to be a criminal act by an unknown assailant. Aside from the increased expense of providing additional supervisors and fence repairs, it is entirely conjecture that such added personnel and repairs if needed would prevent all assaults or negligent acts which can occur despite the highest level of supervision. (*Saelzler, supra,* 25 Cal.4th at p. 777.)

Rinehart simply has not shown, and cannot prove any omission by BGCCV in its supervision or upkeep of its premises was a "substantial factor" in causing his injuries. (*Saelzler, supra,* 25 Cal.4th at pp. 778–781; see also *Leslie G. v. Perry & Associates* (1996) 43 Cal.App.4th 472, 481 [50 Cal.Rptr.2d 785].) The evidence merely shows the speculative possibility that additional supervisors on the Club's playground while children are present or repairs in the fence surrounding the premises might have deterred the rock attack from the top of the hill. Because the identity of the assailant is unknown, Rinehart's expert's opinion regarding causation is too tenuous to create a triable issue whether the lack of or inadequate supervision on the Club's playground, or a fence in disrepair was an actual or legal cause of his assault and battery. (*Saelzler, supra,* 25 Cal.4th at p. 781.) As the court in *Noble, supra,* 168 Cal.App.3d at page 916, noted, "a plaintiff, in order to establish liability, must prove more than abstract negligence unconnected to the injury." Rinehart has failed to show a causal link between his injuries and any negligent failure to supervise by BGCCV.

In sum, contrary to Rinehart's contentions, our independent review shows the trial court properly applied the law under *Ann M., supra,* 6 Cal.4th 666

and *Noble, supra,* 166 Cal.App.3d 912 in this case, and found Rinehart cannot establish either foreseeability of the nonmember rock-throwing incident or that the failure of BGCCV's supervision on the playground or its failure to repair its fence was the actual, legal cause of his injuries. Therefore, the trial court properly granted BGCCV's summary judgment motion and entered judgment in its favor.

## DISPOSITION

The judgment is affirmed. Costs are awarded BGCCV on appeal.

Benke, Acting P. J., and Irion, J., concurred.