Filed 8/28/14  Slosek v. Gibson CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| CANDICE JULIA SLOSEK, | B252305 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. PC052704) |
| v. | |
| MALCOM GIBSON et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Elia Weinbach, Judge.  Affirmed.

Steinberg & Spencer, Steven E. Spencer; Esner, Chang & Boyer and Andrew N. Chang for Plaintiff and Appellant.

Shaver, Korff & Castronovo, Edie L. Brookes and Tod M. Castronovo for Defendants and Respondents.

_____

The essence of plaintiff and appellant's argument is that a property owner has a duty to take whatever care of a visitor to the property a particular visitor is known to need, even if the visitor's needs are extraordinary, the property does not pose any unreasonable or unseen risk, and the property owner has no special relationship with the visitor. California law is to the contrary. The trial court did not err in granting defendants' motion for summary judgment. We affirm.

## BACKGROUND

The material facts are undisputed. Plaintiff and appellant Candice Julia Slosek is the mother of defendant Malcom Gibson. Mr. Gibson is the husband of defendant Sonja Gibson. The couple have two daughters, Isabella aged five and Sophia aged one. At the time of the accident that is the subject of this litigation, Mrs. Slosek, aged 63, had many disabilities, including a history of not being stable on her feet, a history of falls, multiple cardiac pacemakers, a history of fainting spells and dizziness, osteoarthritis, bipolar disorder, and clinical depression. She took 14 different medications daily. The Gibsons were aware of these conditions prior to the accident and took various precautions to ensure Mrs. Slosek did not hurt herself when she was on the property. Among these were that she was rarely left alone with the children inside the house and Mr. Gibson had told her she should not be outside alone with them.

On October 21, 2011, Mrs. Slosek arrived at the Gibsons' home to baby-sit. Isabella wanted to play outside and Mrs. Gibson said it would be okay if Mrs. Slosek went out with the girls. Mr. Gibson was not in the room at the time. Mrs. Slosek and her granddaughters went out on the back patio alone. Just prior to the accident Isabella was slamming her tricycle like a bumper car into the plastic car in which toddler Sophia was sitting. Isabella refused to stop. Mrs. Slosek testified she told Isabella she was "'going to step aside, give you some room to come by so that you don't bump into Sophia and that's when I fell.'" Mrs. Slosek stepped backward intentionally, and in so doing, fell backward off the edge of the patio onto ground-level shrubbery and a path to the pool, suffering injuries.

2

Mrs. Slosek had been in the backyard many times and was familiar with the patio and the step down. She had walked from the back patio down that step along the sidewalk hundreds of times without falling. She had been in the backyard with her granddaughters, along with one or both of their parents, and pushed the toddler in the same plastic car prior to the accident.

The patio is depicted in authenticated photographs that were submitted with the Gibsons' motion for summary judgment. The photographs show a low patio from which one may step down to a ground-level path to the swimming pool, bordered at ground level by shrubbery.

Mrs. Slosek's complaint sought recovery based on general negligence and premises liability. Mrs. Slosek admitted in her response to the Gibsons' separate statement and at oral argument that there was not a dangerous condition on the property. Rather, her theory is that the Gibsons "were negligent in leaving Ms. Slosek alone to babysit [their] small children . . . at their house when [they] knew Ms. Slosek's many serious disabilities made it dangerous for her to babysit the children, particularly in the backyard."[1]

In her briefs on appeal and at oral argument, Mrs. Slosek confirmed she does not contend the Gibsons had a "special duty" to her.

Mrs. Slosek timely appealed the trial court' grant of summary judgment for the Gibsons.

---

[1] There is a dispute as to the height of the step down from the patio to the path: Mrs. Slosek claims it was 18 inches and the Gibsons claim it was six inches. We need not discuss the dispute because the height of the step is immaterial in light of Mrs. Slosek's admission the step did not constitute a dangerous condition and in light of the photograph of the step showing there was no concealed hazard. For the same reasons, we need not discuss any dispute about Mrs. Slosek's deposition testimony that there was nothing about the step down from the patio to ground level that was unsafe or unusual. Finally, in light of the result we reach, we need not consider the Gibsons' evidentiary objections or many of the other issues raised by the parties, which are not material to our conclusions.

**DISCUSSION**

*The trial court did not err in granting the Gibsons' motion for summary judgment*

1. *Standard of review*

"A 'motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' [Citation.] 'A defendant moving for summary judgment "bears the burden of persuasion that 'one or more elements of' the 'cause of action' in question 'cannot be established,' or that 'there is a complete defense' thereto."' [Citation.] An appellate court reviews the trial court's decision de novo." (*Greenberg v. Superior Court* (2009) 172 Cal.App.4th 1339, 1346.)

The existence of a duty is a matter of law reviewed independently on appeal. (*Smith v. Freund* (2011) 192 Cal.App.4th 466, 472.)

The existence of a dangerous condition on real property is a question of fact. The existence of a dangerous condition is treated as ""a question of law if reasonable minds can come to but one conclusion." [Citations.]" (*Davis v. City of Pasadena* (1996) 42 Cal.App.4th 701, 704.)

2. *Applicable law*

a. *Duty of care*

"'In order to establish liability on a negligence theory, a plaintiff must prove duty, breach, causation and damages.' [Citation.]" (*Smith v. Freund*, *supra*, 192 Cal.App.4th at p. 472.) "[T]he basic policy of this state set forth by the Legislature in section 1714 of the Civil Code is that everyone is responsible for an injury caused to another by his want of ordinary care or skill in the management of his property." (*Rowland v. Christian* (1968) 69 Cal.2d 108, 118–119, superseded by Civil Code section 847 in other respects.) Thus, the law is that a failure to use *ordinary* care may result in liability, whereas a failure to use *extraordinary* care generally will not. Similarly, landholders are required to maintain their land ""in a reasonably safe condition."" (*Rinehart v. Boys & Girls Club of Chula Vista* (2005) 133 Cal.App.4th 419, 430; *Rowland v. Christian*, *supra*, 69 Cal.2d at p. 119 ["unreasonable risk of harm"].) Perfection is not required.

4

The court in *Rowland v. Christian* set forth the factors to be balanced in determining the existence of a duty of care under the circumstances. "[T]he major ones are the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (69 Cal.2d at p. 113.)

### b. *Exception to duty of ordinary care where there is a special relationship*

There are exceptions to the rule limiting a landholder's duty to ordinary care, notably when there is a legally recognized special relationship between a plaintiff and a defendant. (*Smith v. Freund*, *supra*, 192 Cal.App.4th at pp. 472–473.) For instance, "'In general, one owes no duty to control the conduct of another person [citations], but the courts have created limited exceptions based on various special relationships between a defendant and . . . the person whose conduct needs to be controlled . . . .'" (*Ibid*.) It follows that, if no special relationship exists, the landholder's duty is limited to one of ordinary care.

### c. *No duty to warn or protect against open and obvious conditions*

In negligence cases involving injuries occurring on a landholder's property, courts distinguish between conditions that are open and obvious and ones that are not. "Where the occupier of land is aware of a concealed condition involving in the absence of precautions an unreasonable risk of harm," liability for failure to warn or repair may follow. (*Rowland v. Christian*, *supra*, 69 Cal.2d at p. 119.)

In *Blodgett v. B. H. Dyas Co.* (1935) 4 Cal.2d 511, whose facts are similar to the present case, the plaintiff did not notice stairs, stepped into them and fell in "'broad daylight.'" (*Id.* at p. 512.) The court affirmed a nonsuit in favor of the defendant, stating, "'The owner of property . . . is not an insurer of safety but must use reasonable

5

care to keep his premises in a reasonably safe condition and give warning of latent or concealed perils. He is not liable for injury . . . resulting from a danger which was obvious or should have been observed in the exercise of reasonable care. [Citations.] [¶] . . . 'There is no duty to give any warning in broad daylight of the presence of a stairway and persons must use their eyes to protect themselves from such obvious dangers. [Citations.]'" (*Id.* at pp. 512–513.) California courts have long held that, "[i]f a danger is so apparent that the invitee can reasonably be expected to notice it and protect against it, the condition itself constitutes adequate warning. [Citations.] . . . 'There is no liability for injuries from the dangers that are obvious . . . .'" (*Walker v. Greenberger* (1944) 63 Cal.App.2d 457, 461–462 [person who slipped on floor he knew might be slippery could not recover based on landholder's duty to warn].)

**3. *The Gibsons have shown Mrs. Slosek cannot establish the duty element of her causes of action***

Mrs. Slosek does not claim the Gibsons had a duty to warn her about the step down or remediate it. Nor does she contend there was any "inherently dangerous" or concealed physical condition in the backyard. Rather, she claims the Gibsons had a duty to prevent her from entering the backyard with her grandchildren in the absence of another adult because her medical conditions made it dangerous for her to do so. In effect, she argues that, despite the lack of a special relationship between her and the Gibsons, they had a duty to control her conduct so that she did not venture into a backyard which had no dangerous or concealed conditions. The argument ignores the established principle that, absent a special relationship, persons do not have a duty to control the conduct of others.

If this were not sufficient in itself, the analysis prescribed in *Rowland v. Christian* establishes the Gibsons' lack of duty to prevent Mrs. Slosek from entering the backyard alone with the children. Although there is a certainty that Mrs. Slosek suffered an injury, the injury was unforeseeable. The patio was not in a dangerous condition, was not in an unreasonable state, and had no concealed hazards. Mrs. Slosek never stepped backward off the patio in the "hundreds" of times she walked there, despite her unfortunate

6

disabilities and the presence of her grandchildren in the backyard on other occasions. Having failed to do so before, it was unforeseeable she would do so this time. This conclusion is buttressed by her familiarity with the patio and the step down, as well as the photographs of the scene, which depict a most ordinary low patio with a step down to ground level.

In addition, Mrs. Slosek admits she stepped backward *intentionally* to give Isabella more room to ride her tricycle. This undisputed fact contradicts the factually unsupported speculation in Mrs. Slosek's briefs that her fall might have been caused by disabilities such as dizziness, unsteadiness on her feet, or any of her other problems.

Moreover, Mrs. Slosek has not posited any theory as to how the presence of her son or daughter-in-law would have kept her from stepping backward off the patio in the split second it took her to do so and fall. Thus, the risk would have been the same whether or not another adult was present, reducing the foreseeability of any harm that can be attributed to their absence.

Addressing the other *Rowland v. Christian* factors, the "closeness of the connection between the defendant's conduct and the injury suffered" weighs against the existence of a duty for the same reasons as lack of foreseeability does. (69 Cal.2d at p. 113.) The same is true as to the policy of preventing future harm by imposing a duty. The Gibsons bear no moral blame for allowing Mrs. Slosek to go into a backyard that had no concealed or dangerous conditions. In fact, Mr. Gibson did not even know she had gone.

The policy considerations identified in *Rowland v. Christian* weigh against a finding of duty as well. Here, as in *Padilla v. Rodas* (2008) 160 Cal.App.4th 742, "[i]mposing a duty under the circumstances of this case also would unreasonably burden social and family relationships, requiring homeowners to provide" whatever supervision their guests might need, "mak[ing] them insurers of their guests' . . . safety." (*Id.* at p. 748.) The costs to homeowners of insuring against breaches of such a duty would likely be significant.

7

Mrs. Slosek relies on a line of cases that holds that landowners must "manage" their property so as to avoid foreseeable injury to persons who visit it. The cases are inapplicable because the essence of the argument is that the Gibsons had a duty to manage her, not the property. Moreover, her injury was not foreseeable.

Mrs. Slosek relies on *Chance v. Lawry's, Inc.* (1962) 58 Cal.2d 368 to argue the trial court should not have concluded the step down from the patio was an open and obvious condition because its dangerousness was an issue of fact for the jury. In so doing, Mrs. Slosek ignores the rule that where "reasonable minds can come to but one conclusion," the dangerousness of a condition of real property "may '"be resolved as a question of law."'" (*Davis v. City of Pasadena*, *supra*, 42 Cal.App.4th at p. 704.) That is the case here. An authenticated photograph of the step was admitted in evidence. What it depicted undisputedly was an open and obvious condition. Indeed, the step in the photograph looks like any ordinary step in any suburban backyard. The photograph is prima facie evidence of the absence of a concealed, dangerous, or unreasonable condition.

## CONCLUSION

The Gibsons have established that Mrs. Slosek cannot prove the essential duty element of her causes of action for general negligence and premises liability. The trial court did not err in granting their motion for summary judgment.

## DISPOSITION

The judgment is affirmed.  Defendants are entitled to costs on appeal.

NOT TO BE PUBLISHED.


MILLER, J.*

We concur:


ROTHSCHILD, P. J.


CHANEY, J.

---

 **\*** Judge of the Los Angeles Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.