[No. B028704. Second Dist., Div. Six. Oct. 4, 1988.]

BARBARA OLSON et al., Plaintiffs and Appellants, v.
CHILDREN'S HOME SOCIETY OF CALIFORNIA, Defendant and
Respondent.

COUNSEL

Martin Brandfon, Gregory F. Jieka and Allison R. Pharis for Plaintiffs and Appellants.

David R. Lampe and LeBeau, Thelen, Lampe & McIntosh for Defendant and Respondent.

OPINION

ABBE, J.—Appellants Barbara and Gary Olson appeal from a judgment entered against them after the court sustained the demurrer of respondent Children's Home Society of California (CHS) without leave to amend. We affirm.

In early 1967 appellant Barbara Olson, then Barbara Stephens, was pregnant. She went to CHS, a state-licensed private adoption agency, for counseling, pre- and postnatal medical treatment and assistance in placing the unborn child for adoption. She gave birth to a male child in February 1967 and in that month signed a relinquishment of her parental rights and agreed to have CHS arrange for his adoption. CHS succeeded in arranging an adoption.

Appellants Barbara and Gary Olson were married in April 1975 and had a daughter in November 1980. The Olsons had another child, a son, in February 1983. This child died at the age of six months of an immune deficiency with hyper-IgM, more commonly known as "combined severe immune deficiency" (CSID). Appellants allege CSID is a genetically transmitted disease carried by females and is manifested in their male offspring.

After their son died and Mrs. Olson learned she was a carrier of the immunodeficiency, she telephoned CHS to inquire of the health of the adopted child. Her telephone inquiry was answered by a letter dated September 29, 1983, from a social work supervisor at CHS. The letter was

attached to the complaint as an exhibit. The social work supervisor stated in the letter she had been able to contact the adoptive family and found that the boy was alive and he had CSID. She indicated that the adopted boy had been diagnosed as having disgammaglobulin anemia in 1971.

Appellants alleged that upon receipt of said letter, Mrs. Olson telephoned its author. During this telephone conversation, the social work supervisor, confirmed that CHS had been informed by the adopting parents that the adopted child was suffering from CSID and that the adopting parents had contacted CHS in 1967 when the adopted boy was first hospitalized at age five months with viral pneumonia. Appellants also allege that CHS was ". . . put on notice of the later diagnosis in 1971 of genetic disease. . . ."

Appellants allege that CHS did not contact Mrs. Olson after finding out that the child was diagnosed as having viral pneumonia in 1967 and a "genetic disease" in 1971. It cannot be ascertained from the complaint if the 1971 diagnosis of disgammaglobulin anemia is tantamount to a finding of CSID.

Appellants filed suit against CHS for wrongful death of their son, for negligent and intentional infliction of emotional distress and for fraud. They alleged that CHS "knew or should have known" the consequences of the medical diagnosis of the adopted child and breached a duty to warn appellants of this diagnosis. They alleged that had they been made aware of the condition of the adopted child, they would have either not conceived their son or would have been able to obtain timely medical treatment which would have saved his life.

The demurrer of CHS was sustained without leave to amend on the ground that the complaint did not state facts sufficient to constitute a cause of action in that it failed to allege any legal duty between appellants and respondent. We agree.

■ The function of a demurrer is to test the sufficiency of the complaint by raising questions of law. The allegations of the complaint must be construed as true and are to be construed liberally. (*Rader Co.* v. *Stone* (1986) 178 Cal.App.3d 10, 20 [223 Cal.Rptr. 806].) We do so here.

■ To constitute a tort, either negligent or intentional conduct involves a violation of a legal duty. Without such a duty, there is no cause of action. (*Peter W.* v. *San Francisco Unified School Dist.* (1976) 60 Cal.App.3d 814, 820 [131 Cal.Rptr. 854].) Whether a person owes a duty of care in a given factual situation presents a question of law which is to be determined by the courts. (*Id.,* at p. 22.)

██ The general rule is that a person who has not created a peril is ordinarily not liable in tort for failing to take affirmative action to assist or protect another, no matter how great the danger or how easily a rescue could be effected. (4 Witkin, Summary of Cal. Law (8th ed. 1974) § 554, p. 2821.) An exception to the general rule occurs if there is some special relationship between the parties which gives rise to a duty to act. (Rest.2d Torts, §§ 314, 314A.)

██ Appellants contend that because of a special relationship between CHS and Mrs. Olson, CHS had a duty to warn them of the risk involved if Mrs. Olson should give birth to another male child, once it learned in 1971 of the medical condition of her first born. In support of their contention that a special relationship arose here, appellants cite *Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166] and *Tresemer* v. *Barke* (1978) 86 Cal.App.3d 656 [150 Cal.Rptr. 384, 12 A.L.R.4th 27]. These cases are inapposite.

In *Tarasoff,* the court found a special relationship existed between a therapist and his patient imposing a duty upon the therapist to others to warn of the patient's threats to kill a specific victim.

In *Tresemer,* the court held a cause of action may be stated against a physician who fails to warn a patient of the dangerous effects of a Dalkon Shield when the physician obtained such knowledge after he prescribed the shield to his patient for her use. The plaintiff in *Tresemer* had consulted her physician for the specific purpose of obtaining a contraceptive.

In both the *Tarasoff* and *Tresemer* cases, there was a nexus between the impending peril and the specific duties undertaken by the defendants in those special relationships. There is no such nexus in the instant case.

The special relationship situations generally involve some kind of dependency or reliance. (*J. A. Meyers & Co.* v. *Los Angeles County Probation Dept.* (1978) 78 Cal.App.3d 309, 315 [144 Cal.Rptr. 186]. In *Mann* v. *State* (1977) 70 Cal.App.3d 773 [139 Cal.Rptr. 82], the court recognized the trend toward a recognition of a duty to aid and protect in any relationship of dependence or of mutual dependence. ██ One of the requisite factors to a finding of special relationship is detrimental reliance by a person on conduct of another which induced a false sense of security and worsened the position of the person relying on the conduct. (*Williams* v. *State of California* (1983) 34 Cal.3d 18, 28 [192 Cal.Rptr. 233, 664 P.2d 137].)

██ Appellants have not alleged any conduct on the part of CHS during the adoption process in 1967 which would justify Mrs. Olson's alleged

permanent condition of dependency or reliance with respect to her future health or that of any children, if any, she might have. Neither a relationship of dependence nor of detrimental reliance has been or could be pled here. There are no allegations in the complaint from which it could be logically deduced that CHS had an obligation to inform Mrs. Olson of the health of the child she was giving up for adoption after the adoption process had been completed. Mrs. Olson could not reasonably expect or rely on such an undertaking by CHS. At no time did CHS expressly or impliedly suggest it would do so.

We conclude that appellants have not stated a cause of action against CHS in that they failed to and cannot establish a duty of care owed by CHS to Barbara Olson. CHS did not create the situation in which Barbara Olson found herself; it took no affirmative action which contributed to, increased, or changed the risk which would have otherwise existed; there is no indication that it voluntarily assumed any responsibility to protect Mrs. Olson's future health or that of her later children; and there is no allegation of any justifiable detrimental reliance on any conduct or failure to act by CHS.

The judgment is affirmed.

Stone (S. J.), P. J., and Gilbert, J., concurred.

Appellants' petition for review by the Supreme Court was denied December 22, 1988.