[No. H033148. Sixth Dist. Mar. 12, 2010.]

CODY MELTON et al., Plaintiffs and Appellants, v.
CLIVE BOUSTRED, Defendant and Respondent.

522

**COUNSEL**

Crowley & Brereton, John Kevin Crowley and Brad C. Brereton for Plaintiffs and Appellants.

Pedersen, Eichenbaum, Lauderdale & Siehl, Andrew M. Lauderdale; Hayes Scott Bonino Ellingson & McLay, Mark G. Bonino and Jamie A. Radack for Defendant and Respondent.

**OPINION**

**McADAMS, J.**—This appeal is taken from an order sustaining a demurrer without leave to amend. At issue is defendant's liability for hosting a party where plaintiffs were attacked by unidentified individuals. We conclude: (1) because defendant did not owe plaintiffs a duty of care, plaintiffs' negligence claims fail; (2) because plaintiffs' nuisance claim merely restates their negligence claims, it also fails; and (3) amendment cannot cure the defects in plaintiffs' complaint. We therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The parties to this action are Cody Melton, Mike Richard Kelly, and Jesse A. Maldonado (collectively, plaintiffs), and Clive Boustred (defendant).

On May 5, 2007, defendant held a party at his residence featuring live music and alcoholic beverages. Defendant advertised the party using an open invitation on the social networking site, MySpace.com. Upon arriving at the party, plaintiffs were attacked, beaten, and stabbed by a group of unknown individuals. They sustained serious injuries.

*Proceedings in the Trial Court*

Plaintiffs brought suit against defendant, asserting claims for negligence and premises liability. Defendant demurred to the original complaint. The court sustained the demurrer with leave to amend.

In March 2008, plaintiffs filed their first amended complaint, which included further factual allegations; it also added a cause of action for nuisance. Plaintiffs' amended complaint thus asserted four causes of action: (1) negligence; (2) premises liability; (3) public nuisance; and (4) battery, asserted against certain Doe defendants only.

Defendant again demurred. The trial court sustained his demurrer, this time without leave to amend.

*Appeal*

Plaintiffs brought this appeal from the order sustaining defendant's demurrer.[1] On appeal, plaintiffs contend that the trial court erred in sustaining

---

[1] We treat the order as appealable, despite the absence of a judgment of dismissal. The general rule of appealability is this: "An order sustaining a demurrer without leave to amend is not appealable, and an appeal is proper only after entry of a dismissal on such an order." (*Sisemore v. Master Financial, Inc.* (2007) 151 Cal.App.4th 1386, 1396 [60 Cal.Rptr.3d 719].)

defendant's demurrer. First, concerning their claims for negligence and premises liability, plaintiffs maintain that defendant owed them a legal duty to protect them against the third party criminal assault, because the risk of injury was foreseeable and the burdens of protecting against it were slight. Plaintiffs also contend that they have stated a viable claim for public nuisance.

## DISCUSSION

As a framework for assessing plaintiffs' contentions, we begin by summarizing the general legal principles that govern demurrers.

### I. *Legal Principles*

"A general demurrer searches the complaint for all defects going to the existence of a cause of action and places at issue the legal merits of the action on assumed facts." (*Carman v. Alvord* (1982) 31 Cal.3d 318, 324 [182 Cal.Rptr. 506, 644 P.2d 192].)

On appeal from the sustention of a demurrer, "we independently review the complaint to determine whether the facts alleged state a cause of action under any possible legal theory." (*Berger v. California Ins. Guarantee Assn.* (2005) 128 Cal.App.4th 989, 998 [27 Cal.Rptr.3d 583].) We will affirm "if proper on any grounds stated in the demurrer, whether or not the court acted on that ground." (*Carman v. Alvord, supra*, 31 Cal.3d at p. 324.) On appeal, "the plaintiff bears the burden of demonstrating that the trial court erred" in sustaining the demurrer. (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 879 [6 Cal.Rptr.2d 151].)

"In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.' " (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58]; accord, *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [6 Cal.Rptr.3d 457, 79 P.3d 569].) Further, "we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." (*Blank v. Kirwan*, at p. 318; see *Schifando v. City of Los Angeles*, at p. 1081.) "If the complaint states a cause of action under any

---

But "when the trial court has sustained a demurrer to all of the complaint's causes of action, appellate courts may deem the order to incorporate a judgment of dismissal, since all that is left to make the order appealable is the formality of the entry of a dismissal order or judgment." (*Ibid.*) That is the case here. "We will accordingly deem the order on the demurrer to incorporate a judgment of dismissal and will review the order." (*Ibid.*; see also, e.g., *Etheridge v. Reins Internat. California, Inc.* (2009) 172 Cal.App.4th 908, 913 [91 Cal.Rptr.3d 816].)

theory, regardless of the title under which the factual basis for relief is stated, that aspect of the complaint is good against a demurrer." (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 38 [77 Cal.Rptr.2d 709, 960 P.2d 513].)

"If the court sustained the demurrer without leave to amend, as here, we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment." (*Schifando v. City of Los Angeles, supra*, 31 Cal.4th at p. 1081.) "The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan, supra*, 39 Cal.3d at p. 318.) "As a general rule, if there is a reasonable possibility the defect in the complaint could be cured by amendment, it is an abuse of discretion to sustain a demurrer without leave to amend." (*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1998) 68 Cal.App.4th 445, 459 [80 Cal.Rptr.2d 329].) "Nevertheless, where the nature of the plaintiff's claim is clear, and under substantive law no liability exists, a court should deny leave to amend because no amendment could change the result." (*Ibid.*)

## II. *Analysis*

With those principles in mind, we consider whether plaintiffs' first amended complaint states causes of action for negligence or for public nuisance. As to each type of claim, we begin by summarizing relevant principles of the governing substantive law. We then apply those principles to the case at hand.

### A. *Negligence Claims*

#### 1. *Substantive Law*

The elements of a cause of action for negligence are duty, breach, causation, and damages. (*Sharon P. v. Arman, Ltd.* (1999) 21 Cal.4th 1181, 1188 [91 Cal.Rptr.2d 35, 989 P.2d 121], disapproved on another ground in *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853, fn. 19 [107 Cal.Rptr.2d 841, 24 P.3d 493]; accord, *Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142, 1145 [12 Cal.Rptr.3d 615, 88 P.3d 517] (*Wiener*).) In this case, the key element is duty.

##### a. *Duty*

Duty "is an essential element" of the tort of negligence. (*Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 984 [25 Cal.Rptr.2d 550, 863 P.2d 795].) Duty "may be imposed by law, be assumed by the defendant, or exist by virtue of a special relationship." (*Id.* at p. 985.) The existence of a

legal duty " ' "depends upon the foreseeability of the risk and a weighing of policy considerations for and against imposition of liability." ' " (*Erlich v. Menezes* (1999) 21 Cal.4th 543, 552 [87 Cal.Rptr.2d 886, 981 P.2d 978].)

■ As provided by statute: "Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself." (Civ. Code, § 1714, subd. (a).) The California Supreme Court expounded the "fundamental principle enunciated by" this provision more than four decades ago, in the seminal case of *Rowland v. Christian* (1968) 69 Cal.2d 108, 112 [70 Cal.Rptr. 97, 443 P.2d 561]. As the *Rowland* court explained, no exception to this statutory principle "should be made unless clearly supported by public policy." (*Id.* at p. 112.) "A departure from this fundamental principle involves the balancing of a number of considerations; the major ones are the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (*Id.* at pp. 112–113; accord, *Wiener, supra*, 32 Cal.4th at p. 1145.) *Rowland* remains "the gold standard against which the imposition of common law tort liability in California is weighed by the courts in this state." (*Juarez v. Boy Scouts of America, Inc.* (2000) 81 Cal.App.4th 377, 401 [97 Cal.Rptr.2d 12].) Courts thus continue to employ *Rowland*'s " 'multi-element duty assessment in determining whether a particular defendant owed a tort duty to a given plaintiff.' " (*Ibid.*)

These same concepts apply to premises liability claims. Generally speaking, "a landowner has a duty to act reasonably in the management of property 'in view of the probability of injury to others.' " (*Garcia v. Paramount Citrus Assn., Inc.* (2008) 164 Cal.App.4th 1448, 1453 [80 Cal.Rptr.3d 512] (*Garcia*), quoting *Rowland v. Christian, supra*, 69 Cal.2d at p. 119.) "In the case of a landowner's liability for injuries to persons on the property, the determination of whether a duty exists" involves balancing the *Rowland* factors set forth above. (*Wiener, supra*, 32 Cal.4th at p. 1145; accord, *Rinehart v. Boys & Girls Club of Chula Vista* (2005) 133 Cal.App.4th 419, 430 [34 Cal.Rptr.3d 677] (*Rinehart*).)

■ "Foreseeability and the extent of the burden to the defendant are ordinarily the crucial considerations, but in a given case one or more of the other *Rowland* factors may be determinative of the duty analysis."

(*Castaneda v. Olsher* (2007) 41 Cal.4th 1205, 1213 [63 Cal.Rptr.3d 99, 162 P.3d 610] (*Castaneda*).) "Once the burden and foreseeability have been independently assessed, they can be compared in determining the scope of the duty the court imposes on a given defendant." (*Vasquez v. Residential Investments, Inc.* (2004) 118 Cal.App.4th 269, 285 [12 Cal.Rptr.3d 846]; accord, *Castaneda*, at p. 1214.)

"The existence of a duty is a question of law for the court." (*Sharon P. v. Arman, Ltd., supra*, 21 Cal.4th at p. 1188.)

### b. *Liability for Third Party Conduct*

■ When analyzing duty in the context of third party acts, courts distinguish between "misfeasance" and "nonfeasance." (*Lugtu v. California Highway Patrol* (2001) 26 Cal.4th 703, 716 [110 Cal.Rptr.2d 528, 28 P.3d 249].) "Misfeasance exists when the defendant is responsible for making the plaintiff's position worse, i.e., defendant has created a risk. Conversely, nonfeasance is found when the defendant has failed to aid plaintiff through beneficial intervention." (*Weirum v. RKO General, Inc.* (1975) 15 Cal.3d 40, 49 [123 Cal.Rptr. 468, 539 P.2d 36] (*Weirum*).)

A legal duty may arise from affirmative acts "where the defendant, through his or her own action (misfeasance) has made the plaintiff's position worse and has created a foreseeable risk of harm from the third person. In such cases the question of duty is governed by the standards of ordinary care." (*Pamela L. v. Farmer* (1980) 112 Cal.App.3d 206, 209 [169 Cal.Rptr. 282]; see *Lugtu v. California Highway Patrol, supra*, 26 Cal.4th at p. 716; *Weirum, supra*, 15 Cal.3d at p. 49.)

By contrast, nonfeasance generally does not give rise to a legal duty. The underlying premise is that "a person should not be liable for 'nonfeasance' in failing to act as a 'good Samaritan.' " (*Pamela L. v. Farmer, supra*, 112 Cal.App.3d at p. 209.) In other words, "one 'who has not created a peril is not liable in tort merely for failure to take affirmative action to assist or protect another' from the acts of a third party." (*Garcia, supra*, 164 Cal.App.4th at p. 1453, fn. 3, quoting *Williams v. State of California* (1983) 34 Cal.3d 18, 23 [192 Cal.Rptr. 233, 664 P.2d 137].) Thus, absent misfeasance, "as a general matter, there is no duty to act to protect others from the conduct of third parties." (*Delgado v. Trax Bar & Grill* (2005) 36 Cal.4th 224, 235 [30 Cal.Rptr.3d 145, 113 P.3d 1159] (*Delgado*).)

■ Even in the case of nonfeasance, there are "recognized exceptions to the general no-duty-to-protect rule," one of which is the special relationship doctrine. (*Delgado, supra*, 36 Cal.4th at p. 235; see *Weirum, supra*, 15 Cal.3d

at p. 49.) "A defendant may owe an affirmative duty to protect another from the conduct of third parties if he or she has a 'special relationship' with the other person." (*Delgado*, at p. 235.)

██ Where there is a legal basis for imposing a duty—as in cases of misfeasance or when a special relationship exists—the court considers the foreseeability of risk from the third party conduct. Generally, "a duty to take affirmative action to control the wrongful acts of a third party will be imposed only where such conduct can be reasonably anticipated." (*Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 676 [25 Cal.Rptr.2d 137, 863 P.2d 207] (*Ann M.*); see *Wiener, supra*, 32 Cal.4th at p. 1146; Rest.2d Torts, § 314A, com. e, p. 120.) And "in the case of *criminal* conduct by a third party, an extraordinarily high degree of foreseeability is required to impose a duty on the landowner, in part because 'it is difficult if not impossible in today's society to predict when a criminal might strike.'" (*Garcia, supra*, 164 Cal.App.4th at p. 1457, quoting *Wiener*, at p. 1150.)

Foreseeability is balanced against "the burden of the duty to be imposed. Where the burden of prevention is great, a high degree of foreseeability is usually required; whereas where there are strong public policy reasons for preventing the harm, or the harm can be prevented by simple means, a lesser degree of foreseeability may be required." (*Rinehart, supra*, 133 Cal.App.4th at p. 431.)

"In each case, however, the existence and scope of a property owner's duty to protect against third party crime is a question of law for the court to resolve." (*Castaneda, supra*, 41 Cal.4th at p. 1213.)

2. *Application*

In their amended complaint, plaintiffs allege that defendant's use of MySpace to promote his party "constituted an unlimited, unrestricted and widely broadcast party invitation to the general public to converge at defendants [*sic*] property." They further allege that the party "was known to include music and alcohol consumption." Plaintiffs assert that defendant "knew, and in the exercise of reasonable care should have known, that to do so would expose plaintiffs and other guests to an unreasonable risk of bodily harm arising from: (1) an unregulated publicly advertised event involving the consumption of alcohol, dancing, live music, and DJ services; (2) without restriction on the number or identity of persons attending; and (3) with no attempt to control admission or provide security or protection for attendees." They further assert that defendant "knew, and should have known, that such actions were highly likely and substantially certain to attract gang members to defendants' property, to attract violent youths to defendants' property, to

create a dangerous condition on defendants' property, and to result in injuries to persons attending the party and others."

In their opening brief on appeal, plaintiffs argue that defendant owed them a duty of care "not to actively create an out-of-control and dangerous public MySpace party" at his residence. Plaintiffs characterize defendant's unrestricted MySpace invitation as "*active* conduct of a property owner" that can give rise to tort liability for the third party criminal assault against them. In response, defendant cites the general rule that there is no duty to act to protect others from the actions of third parties. He also maintains that the assault was minimally foreseeable, while the burden of protecting against it was great.

We conclude that no legal duty arose under the circumstances present here, since this case involves neither misfeasance nor a special relationship. That conclusion is bolstered by assessing the foreseeability of the risk, the burden of preventing the harm, and the other *Rowland* factors.

 a. *No legal duty exists in this case, because defendant did not create the peril that injured plaintiffs.*

As discussed above, as a general rule, "an actor is under no duty to control the conduct of third parties." (*Weirum, supra*, 15 Cal.3d at p. 48.) But that rule does not apply if the claim "is grounded upon an affirmative act of defendant which created an undue risk of harm." (*Ibid.*) "The question in the present case is, in a sense, whether appellant created a 'peril,' that is, an unreasonable risk of harm to others." (*Garcia, supra*, 164 Cal.App.4th at pp. 1453–1454, fn. 3.)

Under the facts alleged here, we conclude defendant did not engage in any active conduct that increased the risk of harm to plaintiffs. As a starting point, we accept as true plaintiffs' factual allegation that defendant issued "an unlimited, unrestricted and widely broadcast" invitation to a party at his home, which was "to include music and alcohol consumption." As we now explain, however, defendant's conduct in issuing that invitation did not create the peril that harmed plaintiffs.

We find guidance on this point in two cases involving negligent (not criminal) third party conduct: *Weirum, supra*, 15 Cal.3d 40, and *Sakiyama v. AMF Bowling Centers, Inc.* (2003) 110 Cal.App.4th 398 [1 Cal.Rptr.3d 762] (*Sakiyama*).

In *Sakiyama*, two teenagers were killed and another two were injured in a single-car crash, after leaving an all-night rave party hosted at the defendant's

premises. (*Sakiyama, supra*, 110 Cal.App.4th at p. 402.) Affirming defense summary judgment, the court concluded that the defendant "did not have a duty not to allow its facility to be used for such a party, even if it knew or could assume that drugs would be used by some of the attendees." (*Ibid.*) As the court explained: "While drugs may have been anticipated, the teenagers did not need to use drugs to attend the party. [The defendant] did not promote drug use; in fact, it took numerous steps to discourage and prevent drug use. And, although the party lasted all night, the attendees were not required to stay until they were too tired to drive home." (*Id.* at p. 408.) As the court further noted, "the all-night party at issue herein resembles many commonplace commercial activities. Countless bars and restaurants, for example, are open late and provide patrons with the opportunity to drink alcohol, become intoxicated, and then drive. Rock concerts are advertised to and attended by teenagers who thereafter drive home, sometimes under the influence of alcohol and/or drugs. Annual New Year's Eve parties routinely are celebrated until early morning hours, with partygoers driving home either impaired or extremely fatigued. All-night parties, complete with a variety of alcoholic beverages, are an inescapable aspect of college life. Courts have refused to hold business owners and hosts in these situations liable for negligence." (*Id.* at p. 409.)

In *Weirum*, the defendant, a "rock radio station with an extensive teenage audience conducted a contest which rewarded the first contestant to locate a peripatetic disc jockey. Two minors driving in separate automobiles attempted to follow the disc jockey's automobile to its next stop. In the course of their pursuit, one of the minors negligently forced a car off the highway, killing its sole occupant." (*Weirum, supra*, 15 Cal.3d at p. 43.) Finding a basis for duty in the defendant's conduct, the court reasoned: "Money and a small measure of momentary notoriety awaited the swiftest response. It was foreseeable that defendant's youthful listeners, finding the prize had eluded them at one location, would race to arrive first at the next site and in their haste would disregard the demands of highway safety." (*Id.* at p. 47.) Affirming a jury verdict against the station, the high court concluded that "reckless conduct by youthful contestants, stimulated by defendant's broadcast, constituted the hazard to which decedent was exposed." (*Ibid.*) Under those circumstances, the court found "little doubt" that "an act of misfeasance" was involved. (*Id.* at p. 49.) Liability thus was properly predicated on the defendant's "creation of an unreasonable risk of harm" to the decedent. (*Ibid.*)

Factually, the crux of the difference between *Weirum* and *Sakiyama* is this: In *Weirum*, "hazardous driving by teenagers was a necessary component" of the conduct at issue, whereas in *Sakiyama*, "the rave party was simply a party attended by teenagers." (*Sakiyama, supra*, 110 Cal.App.4th at p. 408, discussing *Weirum, supra*, 15 Cal.3d at pp. 47–48.)

In that regard, our case is more like *Sakiyama* than *Weirum*. The violence that harmed plaintiffs here was not "a necessary component" of defendant's MySpace party. (*Sakiyama, supra,* 110 Cal.App.4th at p. 408.) Moreover, in our case, defendant took no action to stimulate the criminal conduct. (Cf. *Weirum, supra,* 15 Cal.3d at p. 48 [the "contest was no commonplace invitation" but instead "was a competitive scramble in which the thrill of the chase to be the one and only victor was intensified by the live broadcasts"].) Here, defendant merely invited people—including unknown individuals—to attend a party at his house. To paraphrase *Sakiyama*: "To impose ordinary negligence liability on [a property owner who] has done nothing more than allow [his home] to be used for [a] party . . . would expand the concept of duty far beyond any current models." (*Sakiyama,* at p. 406.)

Since defendant did not engage in active conduct that increased the risk of harm to plaintiffs, there is no basis for imposing a legal duty on him to prevent the harm inflicted by unknown third persons. (*Delgado, supra,* 36 Cal.4th at p. 235 [no liability for criminal third party conduct]; *Sakiyama, supra,* 110 Cal.App.4th at p. 402 [no liability for negligent third party conduct]; cf. *Pamela L. v. Farmer, supra,* 112 Cal.App.3d at p. 209 [liability where the defendant's conduct increased the risk of criminal third party conduct]; *Weirum, supra,* 15 Cal.3d at p. 49 [liability where the defendant's conduct increased the risk of negligent third party conduct].) This case thus falls under the general rule that "absent a special relationship, an actor is under no duty to control the conduct of third parties." (*Weirum,* at p. 48.)

b. *There is no special relationship giving rise to a legal duty.*

As noted above, a special relationship may give rise to a legal duty to protect the plaintiff from third parties, even in the absence of misfeasance by the defendant. "The special relationship situations generally involve some kind of dependency or reliance." (*Olson v. Children's Home Society* (1988) 204 Cal.App.3d 1362, 1366 [252 Cal.Rptr. 11]; see *Pamela L. v. Farmer, supra,* 112 Cal.App.3d at p. 211 [based on defendant's invitation to neighbor children, "necessary special relationship" could "be inferred"].) "Courts have found such a special relationship in cases involving the relationship between business proprietors such as shopping centers, restaurants, and bars, and their tenants, patrons, or invitees." (*Delgado, supra,* 36 Cal.4th at p. 235.) In addition, such "special relationships triggering a duty to protect another from foreseeable injury caused by a third party have been found in other contexts, including those of (i) common carriers and passengers, (ii) innkeepers and their guests, and (iii) mental health professionals and their patients." (*Id.* at p. 236, fn. 14.)

In this case, plaintiffs have not alleged facts supporting the existence of any special relationship recognized by law that would trigger a legal duty on defendant's part to protect them. The complaint alleges that plaintiffs came to defendant's house to attend a party. Those facts do not warrant application of the special relationship doctrine, and plaintiffs do not argue otherwise.

Here, given defendant's nonfeasance and the absence of a special relationship, defendant had no legal duty to protect plaintiffs from the third party criminal conduct that harmed them. That determination is strengthened by assessing the foreseeability of the risk, the burden of preventing the harm, and the other *Rowland* factors, a process that we now undertake.

### c. *The criminal attack was not reasonably foreseeable.*

As explained above, "in the case of *criminal* conduct by a third party, an extraordinarily high degree of foreseeability is required to impose a duty on the landowner . . ." for the resulting harm. (*Garcia, supra,* 164 Cal.App.4th at p. 1457.)

In determining whether this heightened standard of foreseeability has been established, the defendant's knowledge is critical. (See Rest.2d Torts, § 314A, com. e, p. 120 ["defendant is not liable where he neither knows nor should know of the unreasonable risk . . ."].) When the court engages "in any analysis of foreseeability, the emphasis must be on the specific, rather than more general, facts of which a defendant was or should have been aware." (*Pamela W. v. Millsom* (1994) 25 Cal.App.4th 950, 957 [30 Cal.Rptr.2d 690].)

In this case, the complaint asserts "that defendant knew or should have known" that his actions in hosting a party with music and alcohol, in promoting it on the Internet, and in failing to control admission to the party "would expose plaintiffs and other guests to an unreasonable risk of bodily harm" and would "attract gang members to defendants' property, . . . attract violent youths to defendants' property, . . . create a dangerous condition on defendants' property, and . . . result in injuries to persons attending the party and others." Because those assertions are wholly conclusory, however, we need not and do not treat them as true. (*Blank v. Kirwan, supra,* 39 Cal.3d at p. 318 [demurrer does not admit " 'contentions, deductions or conclusions of fact or law' "].)

Stripped of its bare contentions, the complaint contains no allegations that defendant was aware that his invitation would result in the criminal assault on plaintiffs. (Cf. *Martinez v. Bank of America* (2000) 82 Cal.App.4th 883, 891 [98 Cal.Rptr.2d 576] [where the defendant bank "had no knowledge of the dogs' allegedly vicious propensity, the harm was not foreseeable and the Bank had no duty to take measures to prevent the attack"].)

The lack of knowledge on defendant's part distinguishes this case from one on which plaintiffs heavily rely, *Hansen v. Richey* (1965) 237 Cal.App.2d 475 [46 Cal.Rptr. 909]. *Hansen* was a wrongful death action, brought against homeowners who hosted a large party where a young man drowned. (*Id.* at p. 476.) In reversing the judgment of nonsuit, the court stated: "If the jury found negligence, the actionable wrong would consist not of maintenance of a dangerous swimming pool, but of negligence in the active conduct of a party for a large number of youthful guests in the light of *knowledge* of the dangerous pool." (*Id.* at p. 481, italics added.) Given this emphasis on knowledge, *Hansen* does not assist plaintiffs.

For similar reasons, this case is also distinguishable from *Pamela L. v. Farmer, supra*, 112 Cal.App.3d 206. In that case, the defendant invited neighborhood children to her home while her husband Richard was there alone, allegedly "with knowledge that Richard had molested women and children in the past and that it was reasonably foreseeable he would do so again if left alone with the children on the premises." (*Id.* at p. 210.) Given those facts, the defendant "could be held to have unreasonably exposed the children to harm." (*Ibid.*) "Assuming the allegations of Richard's past conduct and [the defendant's] knowledge thereof were adequately proved, the most important factor, foreseeability of harm, is great." (*Id.* at p. 211.)

Defendant's lack of knowledge likewise sets this case apart from *Frances T. v. Village Green Owners Assn.* (1986) 42 Cal.3d 490 [229 Cal.Rptr. 456, 723 P.2d 573]. There, the plaintiff demonstrated that the defendant condominium association "was on notice that crimes were being committed" against its residents and the pleading also showed "affirmatively that defendant was aware of the link between the lack of lighting and crime." (*Id.* at p. 503.) Under those circumstances, the plaintiff "alleged facts sufficient to show the existence of a duty" on the defendant's part. (*Ibid.*)

In analyzing the defendant's knowledge, a related consideration is the existence of prior similar incidents. In this case, there is no allegation that defendant had any "particularized information concerning 'prior similar incidents of violent crime on the landowner's premises.'" (*Pamela W. v. Millsom, supra*, 25 Cal.App.4th at p. 959; see also, e.g., *Rinehart, supra*, 133 Cal.App.4th at p. 434 [there were no "prior 'similar' incidents of serious assaultive conduct with rocks or other objects" and none of defendant's employees "had any knowledge of injuries suffered from rock-throwing incidents of any type before the incident in this case"].) We acknowledge that "the fortuitous absence of prior injury does not justify relieving defendant from responsibility for the foreseeable consequences of its acts." (*Weirum, supra*, 15 Cal.3d at p. 47.) But in cases involving liability for third party criminal conduct, "the requisite degree of foreseeability rarely, if ever, can be

proven in the absence of prior similar incidents." (*Martinez v. Bank of America, supra,* 82 Cal.App.4th at p. 895, citing *Ann M., supra,* 6 Cal.4th at p. 679.) Here, that standard is not met.

In their reply brief, plaintiffs rely on "common sense" as support for their assertion that defendant should have known that his actions created a peril. They argue that "a homeowner of common sense would know that a public invitation posted on MySpace to a free party offering music and alcohol was substantially certain to result in an injury to someone." More specifically, plaintiffs say, "anyone with common sense would know" that such conduct "would bring [plaintiffs] into contact with persons who[] were peculiarly likely to commit violent crime." According to plaintiffs: "Common sense is sufficient to inform against the act, and if common sense is not a measure of reasonableness, the meaning is hard to imagine."

 Common sense is not the standard for determining duty. (Cf. *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 778 [107 Cal.Rptr.2d 617, 23 P.3d 1143] [declining "to adopt a rule of common sense that seemingly would prevent summary judgment on the causation issue *in every case* in which the defendant failed to adopt increased security measures of some kind"].) Nor is hindsight. (*Weirum, supra,* 15 Cal.3d at p. 40; *Sakiyama, supra,* 110 Cal.App.4th at p. 407.) Instead, the "analysis must focus on the *foreseeability* of harm occurring, not its probability, a more stringent standard." (*Juarez v. Boy Scouts of America, Inc., supra,* 81 Cal.App.4th at p. 403.) "Unfortunately, random, violent crime is endemic in today's society. It is difficult, if not impossible, to envision any locale open to the public where the occurrence of violent crime seems improbable." (*Ann M., supra,* 6 Cal.4th at p. 678.) But that does not make a particular criminal act foreseeable for purposes of a duty analysis. (*Id.* at p. 679 ["violent criminal assaults were not sufficiently foreseeable to impose a duty upon [defendant] to provide security guards . . ."]; *Rinehart, supra,* 133 Cal.App.4th at p. 434 [harm from rock throwers "was not reasonably foreseeable"]; cf. *Juarez v. Boy Scouts of America, Inc., supra,* 81 Cal.App.4th at p. 404 ["it should be reasonably foreseeable to the Scouts that a child participating in scouting might fall prey to a sexual predator . . ."].)

An injury is reasonably foreseeable only if its occurrence is likely enough in modern daily life that reasonable people would guard against it. (*Bigbee v. Pacific Tel. & Tel. Co.* (1983) 34 Cal.3d 49, 57 [192 Cal.Rptr. 857, 665 P.2d 947]; *Sturgeon v. Curnutt* (1994) 29 Cal.App.4th 301, 307 [34 Cal.Rptr.2d 498]; see *Sakiyama, supra,* 110 Cal.App.4th at p. 407 [the foreseeability requirement was met since "the party was 'sufficiently likely to result in auto accidents' which would injure both rave attendees and members of the general public"].) With criminal conduct, an "extraordinarily high degree of foreseeability" is necessary. (*Garcia, supra,* 164 Cal.App.4th at p. 1457.)

On the facts alleged here, we conclude that the criminal attack on plaintiffs was not reasonably foreseeable. Moreover, even if we assume that it was, the burden of preventing the particular criminal conduct outweighs the foreseeable risk of harm, as we now explain.

### d. *The security measures proposed by plaintiffs are unduly burdensome.*

Imposing "a duty of care to protect against criminal assaults requires 'balancing the foreseeability of the harm against the burden of the duty to be imposed.' " (*Wiener, supra,* 32 Cal.4th at pp. 1146–1147, quoting *Ann M., supra,* 6 Cal.4th at p. 678.) In assessing burden, the court considers the burdensomeness, "vagueness, and efficacy of the proposed security precaution." (*Wiener,* at p. 1147.) In undertaking that assessment, first the court must "identify the specific action or actions the plaintiff claims the defendant had a duty to undertake." (*Castaneda, supra,* 41 Cal.4th at p. 1214.) Then " 'the court must analyze how financially and socially burdensome these proposed measures would be to a landlord, which measures could range from minimally burdensome to significantly burdensome under the facts of the case.' " (*Ibid.*)

In this case, plaintiffs posit two types of precautionary measures: providing security at the party and limiting the invitees.

Concerning security, the complaint alleges that defendant "had a duty to take affirmative action to control, guard against, and limit the wrongful acts of third parties which threatened the physical safety of plaintiffs and other guests" and that a "reasonable person in defendants' position would have . . . taken the proper steps to ensure adequate security in order to prevent the occurrences of violence and to protect his guests' physical safety."

To the extent that plaintiffs are urging the employment of security guards, the facts of this case do not support the imposition of a duty to do so. The California Supreme Court has repeatedly found "the burden of hiring security guards" to be "extremely high, so high in fact, that the requisite foreseeability to trigger the burden could rarely, if ever, be proven without prior similar incidents." (*Wiener, supra,* 32 Cal.4th at p. 1147; see also *Ann M., supra,* 6 Cal.4th at p. 679; *Sharon P. v. Arman, Ltd., supra,* 21 Cal.4th at p. 1199; *Delgado, supra,* 36 Cal.4th at pp. 239–240.) Given the absence of prior similar incidents, that standard is not met here.

The other security measure proposed by plaintiffs is restriction of the guest list. According to the complaint, the MySpace.com Web site has tools that permit users to limit invitations to "friends" only, which defendant did not

use. Plaintiffs repeat that refrain in their opening brief, saying: "Defendant could have limited the scope and audience of the party invitation." (See *Pamela L. v. Farmer, supra*, 112 Cal.App.3d at p. 211 ["burden on respondent to avoid the harm was slight; she could have suggested simply that she did not want plaintiffs to come over to swim while respondent was not home"].) Plaintiffs argue: "The methods available to the defendant to limit the scope of the invitation were neither burdensome nor expensive: defendant could have simply limited the invitation to persons . . . he knew, rather than issuing an invitation to the public at large." At another point in their opening brief, plaintiffs assert that "defendant could have limited the invitation to friends, acquaintances, or even friends of acquaintances."

We disagree with plaintiffs' assessment of the burden of limiting the guest list. In our view, the proposed measure is objectionable on several grounds, including vagueness, lack of efficacy, and burdensomeness in terms of social cost. (See *Wiener, supra*, 32 Cal.4th at p. 1147.)

First, plaintiffs' proposal is vague. Plaintiffs vacillate on whether the list should be limited to individuals personally known to the host or whether it also could include "acquaintances, or even friends of acquaintances." Moreover, as defendant points out, any attempt to define any of those categories will prove slippery.

Second, there is no basis for finding that the proposed security measure would be effective in preventing the harm. Since the assailants who attacked plaintiffs were never identified or apprehended, there is no way to know whether they were among defendant's friends, acquaintances, or friends of acquaintances, all of whom presumably could be invited under plaintiffs' proposal. (Cf. *Castaneda, supra*, 41 Cal.4th at p. 1217 ["proposed screening" of housing applicants' criminal records was not "likely to be especially effective" in identifying gang affiliation]; *Rinehart, supra*, 133 Cal.App.4th at p. 435 [no indication that better supervision or upkeep "would have prevented the incident"].) "No one really knows why people commit crime, hence no one really knows what is 'adequate' deterrence in any given situation." (*7735 Hollywood Blvd. Venture v. Superior Court* (1981) 116 Cal.App.3d 901, 905 [172 Cal.Rptr. 528]; accord, *Ann M., supra*, 6 Cal.4th at p. 679.)

Third, the proffered guest list limitation is socially burdensome. In assessing a proposed security measure, we consider its impact both on the defendant and on society at large. (*Castaneda, supra*, 41 Cal.4th at p. 1218; *Garcia, supra*, 164 Cal.App.4th at p. 1456.) Here, as defendant aptly observes, "plaintiffs would effectively prevent [him] from networking . . . both socially and professionally as well as promoting his latest endeavor." The proposed precaution thus represents a weighty social burden.

"Weighed against this significant burden is the low foreseeability of the type of conduct that directly caused" plaintiffs' injuries. (*Garcia, supra*, 164 Cal.App.4th at p. 1460; cf. *Vasquez v. Residential Investments, Inc., supra*, 118 Cal.App.4th at p. 286 ["a high degree of foreseeability is not required to impose the minimally burdensome measures urged here"].) Under all of the circumstances presented here, the foreseeability of the criminal conduct that injured plaintiffs "does not outweigh the high burden the proposed duty would place" on defendant and on other private hosts "to prevent such conduct." (*Garcia*, at p. 1460.) For that reason, no legal duty exists.

### e. *Other considerations do not support a finding of duty.*

Foreseeability and the burden to the defendant "have evolved to become the primary factors considered in every case," but one or more of the "remaining *Rowland* factors . . . may apply in any given case to alter the balance in light of policy considerations." (*Vasquez v. Residential Investments, Inc., supra*, 118 Cal.App.4th at pp. 280–281, fn. 5; accord, *Castaneda, supra*, 41 Cal.4th at p. 1213.) In this case, none of those factors operates to alter the no-duty determination reached here. For example, as discussed above, defendant's "conduct has no close connection to the injury suffered." (*Martinez v. Bank of America, supra*, 82 Cal.App.4th at p. 896; cf. *Pamela L. v. Farmer, supra*, 112 Cal.App.3d at p. 211.) "For the same reason, we are unable to perceive any moral blame on [defendant's] part." (*Martinez v. Bank of America*, at p. 896; cf. *Pamela L. v. Farmer*, at p. 211.)

### 3. *Conclusion*

To sum up, no legal duty arose under the facts alleged here. First, contrary to plaintiffs' contentions, this case does not involve defendant's active conduct (misfeasance). Second, no special relationship has been alleged here. Third, the criminal attack on plaintiffs was not reasonably foreseeable. Fourth, the burden of preventing the harm outweighs the foreseeable risk. Finally, the other *Rowland* factors do not support a finding of duty.

In the absence of a legal duty, no negligence claim can be stated against defendant. (*Wiener, supra*, 32 Cal.4th at p. 1145.) The trial court thus acted properly in sustaining defendant's demurrer to the first and second causes of action of plaintiffs' amended complaint, for negligence and premises liability.

We now turn to plaintiffs' sole remaining claim against defendant, their third cause of action, which asserts public nuisance.

B. *Public Nuisance Claim*

 1. *Substantive Law*

■ A nuisance is statutorily defined as anything "injurious to health" or "indecent or offensive to the senses, or an obstruction to the free use of property" that interferes "with the comfortable enjoyment of life or property . . . ." (Civ. Code, § 3479.) "A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal." (Civ. Code, § 3480.) As the California Supreme Court has explained, "public nuisances are offenses against, or interferences with, the exercise of *rights common to the public.*" (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1103 [60 Cal.Rptr.2d 277, 929 P.2d 596].) The interference must be both substantial and unreasonable. (*Id.* at p. 1105; *Birke v. Oakwood Worldwide* (2009) 169 Cal.App.4th 1540, 1547 [87 Cal.Rptr.3d 602].)

■ The elements "of a cause of action for public nuisance include the existence of a duty and causation." (*In re Firearm Cases* (2005) 126 Cal.App.4th 959, 988 [24 Cal.Rptr.3d 659]; see generally *Birke v. Oakwood Worldwide, supra*, 169 Cal.App.4th at p. 1548.) Public nuisance liability "does not hinge on whether the defendant owns, possesses or controls the property, nor on whether he is in a position to abate the nuisance; the critical question is whether the defendant created or assisted in the creation of the nuisance." (*City of Modesto Redevelopment Agency v. Superior Court* (2004) 119 Cal.App.4th 28, 38 [13 Cal.Rptr.3d 865]; accord, *County of Santa Clara v. Atlantic Richfield Co.* (2006) 137 Cal.App.4th 292, 306 [40 Cal.Rptr.3d 313].)

■ Given "the broad definition of nuisance," the independent viability of a nuisance cause of action "depends on the facts of each case." (*El Escorial Owners' Assn. v. DLC Plastering, Inc.* (2007) 154 Cal.App.4th 1337, 1348 [65 Cal.Rptr.3d 524].) "Where negligence and nuisance causes of action rely on the same facts about lack of due care, the nuisance claim is a negligence claim." (*Id.* at p. 1349.) The nuisance claim "stands or falls with the determination of the negligence cause of action" in such cases. (*Pamela W. v. Millsom, supra*, 25 Cal.App.4th at p. 954, fn. 1.)

 2. *Application*

In this case, plaintiffs' amended complaint alleges no additional facts in support of the nuisance claim. That claim thus relies entirely on the facts asserted in plaintiffs' causes of action for negligence and premises liability.

Plaintiffs incorporate by reference the factual allegations of those causes of action. They then make the conclusory assertions that the MySpace party "amounted to a public nuisance within the meaning" of California law; that defendant's conduct "amounted to, and created, a public nuisance within the meaning" of California law; and that "Plaintiffs were specially injured as alleged in this complaint so as to allow them standing to sue for their injuries arising from said public nuisance."

As framed by plaintiffs' complaint, the "nuisance cause of action was merely a clone of the first cause of action using a different label." (*El Escorial Owners' Assn. v. DLC Plastering, Inc., supra*, 154 Cal.App.4th at p. 1349.) It thus falls with the negligence causes of action. (*Ibid.*; *Pamela W. v. Millsom, supra*, 25 Cal.App.4th at p. 954, fn. 1.)

Resisting this conclusion, plaintiffs rely on *Birke v. Oakwood Worldwide, supra*, 169 Cal.App.4th 1540. That case does not assist them, however. In *Birke*, the court painstakingly discussed the plaintiff's detailed factual allegations of public nuisance. (*Id.* at pp. 1548, 1551–1552.) It concluded that the plaintiff had "pleaded a cause of action for public nuisance sufficient to withstand a demurrer." (*Id.* at p. 1543.) The plaintiff's alternate claim that "even if the public nuisance claim fails, Birke alleged facts that stated a cause of action against Oakwood for negligently increasing her risk of cancer . . ." was not addressed. (*Id.* at p. 1547.) For that reason, the *Birke* case sheds no light on the dispositive question here: whether "the nuisance claim is a negligence claim." (*El Escorial Owners' Assn. v. DLC Plastering, Inc., supra*, 154 Cal.App.4th at p. 1349.)

To sum up, plaintiffs' cause of action for public nuisance has no independent vitality, because it merely restates their negligence claims "using a different label." (*El Escorial Owners' Assn. v. DLC Plastering, Inc., supra*, 154 Cal.App.4th at p. 1349.) That being so, the trial court properly sustained defendant's demurrer to plaintiffs' nuisance cause of action.

C. *Leave to Amend the Pleading*

"Whether to grant leave to amend a complaint is a matter within the discretion of the trial court." (*Reynolds v. Bement* (2005) 36 Cal.4th 1075, 1091 [32 Cal.Rptr.3d 483, 116 P.3d 1162].) "A trial court's order sustaining a demurrer without leave to amend is reviewable for abuse of discretion 'even though no request to amend [the] pleading was made.' (Code Civ. Proc., § 472c, subd. (a).)" (*Performance Plastering v. Richmond American Homes of California, Inc.* (2007) 153 Cal.App.4th 659, 667–668 [63 Cal.Rptr.3d 537].) It is reviewable "even if the plaintiff does not claim on appeal that the trial court abused its discretion in sustaining a demurrer without leave to amend."

(*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 971 [9 Cal.Rptr.2d 92, 831 P.2d 317].) Even so, the plaintiff must demonstrate a reasonable possibility that the complaint's defects can be cured by amendment. (*Reynolds v. Bement*, at p. 1091.) In this case, plaintiffs have failed to carry that burden.

Under the governing substantive law, plaintiffs cannot amend their complaint to state a cause of action for negligence or premises liability. Plaintiffs' public nuisance cause of action falls with the negligence claims. And plaintiffs have failed to demonstrate a reasonable possibility that the defects in the nuisance claim could be cured by amendment. For all of these reasons, we find no abuse of discretion in the trial court's decision to sustain the demurrer without leave to amend.

## DISPOSITION

Treating the order sustaining the demurrer as a judgment of dismissal, we affirm.

Bamattre-Manoukian, Acting P. J., and Mihara, J., concurred.