Filed 10/29/21  Sternick v. Roman Catholic Bishop of Stockton CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Calaveras)

----

| | |
|---|---|
| LAURA STERNICK, | C088661 |
| Plaintiff and Appellant, | (Super. Ct. No. 16CV41484) |
| v. | |
| ROMAN CATHOLIC BISHOP OF STOCKTON et al., | |
| Defendants and Respondents. | |

Plaintiff Laura Sternick appeals in pro per from a judgment of nonsuit (Code Civ. Proc., § 581c) in favor of defendants Roman Catholic Bishop of Stockton (the Diocese) and Madonna of Peace Retreat Center (the Retreat Center).[1]  She argues the trial court erred in granting nonsuit on a negligence action arising from a fire.  She also argues the trial court erred in coordinating her case with related cases arising from the same fire.  She also challenges various evidentiary rulings.  We reject all of Sternick's contentions and affirm the judgment.

_____

[1] Undesignated statutory references are to the Code of Civil Procedure.

# I. BACKGROUND[2]

Sternick filed a form complaint against the Diocese and Retreat Center on March 1, 2016.[3] The complaint alleges the Diocese owns and operates the Retreat Center. The complaint further alleges that a fire broke out at the Retreat Center on June 22, 2014. According to the complaint, the fire spread to Sternick's nearby property, causing damage to her personal and real properties.

The complaint does not address the cause or causes of the fire. However, the record elsewhere indicates that the fire was caused by Cirilo Alvarado and Jacinto Flores, members of a radio club that used the Retreat Center's property for club activities.[4] The record indicates that Alvarado and Flores were attempting to construct a cattle barrier around a pump house in which radio club equipment was stored. A spark generated in the construction process apparently blew onto some dry grass, causing the fire to ignite. The Diocese and Retreat Center answered the complaint and denied the allegations.

## A. Related Cases

Other actions were brought against the Diocese and Retreat Center in the aftermath of the fire. The Diocese and Retreat Center gave notice of one such case—

---

[2] We have only a limited record of the trial court proceedings. As we shall discuss, Sternick has elected to proceed with a settled statement prepared according to California Rules of Court, rule 8.137 (all further rule references are to the California Rules of Court) rather than a reporter's transcript. The settled statement is unclear in numerous respects. Sternick has also provided only a partial clerk's transcript. We have done our best to ascertain the relevant facts and procedural history from the incomplete record before us.

[3] The complaint names Stockton Catholic Diocese and Madonna Retreat. The correct party names are the Roman Catholic Bishop of Stockton and Madonna of Peace Retreat Center.

[4] The Retreat Center filed a cross-complaint against Alvarado and Flores, but the cross-complaint was dismissed.

*Nordstrom v. Diocese of Stockton, et al,* Calaveras County Superior Court, Case No. 16CV41573 (the *Nordstrom* case)—on May 9, 2016.

The trial court held a case management conference on July 6, 2016. Afterwards, the trial court entered an order setting a further case management conference "to be heard at the same time as related case 16CV41573 [the *Nordstrom* case]."

The trial court held another case management conference on December 28, 2016. Afterwards, the trial court entered an order stating, "These matters will continue to be coordinated for case management and trial." The order does not identify the "coordinated" matters.

The Retreat Center filed a settlement conference statement on January 11, 2018. The settlement conference statement characterizes the present action as "one of three cases being tried simultaneously." The settlement conference statement identifies the other cases as the *Nordstrom* case and *California Department of Forestry and Fire Protection v. Madonna of Peace Retreat Center, et al.,* Calaveras County Superior Court, Case No. 16CV41659 (the *Cal Fire* case). The settlement conference statement also indicates that a fourth related case had been filed but never served, *McDonald v. Powell, et al.,* Calaveras County Superior Court, Case No. 16CV41704 (the *McDonald* case).

The trial court conducted a settlement conference on January 19, 2018. Following the settlement conference, the trial court entered an order stating, "For all purposes, [the] Court on its own motion adds 16CV41704 [the *McDonald* case] to the coordinated cases of 16CV41659 [the *Cal Fire* case], 16CV41573 [the *Nordstrom* case], and 16CV41484 [the present case], including trial dates being set." A jury trial was set for November 7, 2018. However, Sternick's case appears to have been the only one to proceed to trial.[5]

---

[5] As we shall discuss, Sternick filed a renewed motion to reopen discovery in the present case, in which she represented that the *Cal Fire* case would not be going to trial. We take judicial notice of Sternick's renewed motion on our own motion. We also take judicial

3

*B.*     *Order Denying Discovery Motions*

On February 23, 2018, the trial court entered an order denying three interrelated discovery motions by Sternick.[6]  The order characterizes the motions as:  (1) a motion seeking relief from Sternick's failure to timely disclose expert witnesses; (2) a motion seeking to reopen discovery; and (3) a motion allowing Sternick to serve a tardy disclosure of expert witnesses and/or quashing objections to notices she had served in lieu of subpoenas (presumably of her desired experts).  The trial court denied the first and second motions on the grounds that Sternick failed to file the required meet-and-confer declarations.  (§ 2016.040.)  The trial court denied both motions "Without Prejudice to be renewed expeditiously and with full compliance with all statutory requirements."

*C.*     *Order Denying Renewed Discovery Motion*

On September 27, 2018, Sternick filed a renewed motion to reopen discovery and submit tardy expert witness information before trial.  The motion represents that the California Department of Forestry and Fire Protection (Department) had decided to discontinue prosecution of the *Cal Fire* case.  The motion argues that the Department's actions in the *Cal Fire* case necessitated "EMERGENCY EXTENDED DISCOVERY DEADLINE AND A REOPENING OF EXPERT DISCOVERY" in the present case.

 On October 26, 2018, the trial court entered an order denying the renewed motion.  The trial court found that "waiting over seven months to file a renewed motion falls far short of being 'renewed expeditiously' and amounts to laches, a failure to do equity that justifies denying a request for relief that is essentially of an equitable nature."  "Moreover," the trial court continued, "to grant the requested relief on the eve of trial

---

notice on our own motion of a notice of entry of dismissal filed in the *Nordstrom* case on April 2, 2018, and a minute order entered in the *McDonald* case on November 28, 2018.

[6] The motions have not been made part of our record on appeal.

would result in necessarily further delaying resolution of the numerous claims that have been coordinated for trial purposes, thereby prejudicing all other parties."

D.      *Motions in Limine*

The Diocese and Retreat Center filed several motions in limine.  First, the Diocese and Retreat Center moved to preclude Sternick from reading into the record the deposition testimony of any person or party other than John Powell, the caretaker for the Retreat Center.  The Diocese and Retreat Center explained that Powell's deposition had been taken in the *Cal Fire* case, along with the depositions of various Department employees.  However, the motion continued, the Department was not a party to the present litigation.  Accordingly, the Diocese and Retreat Center argued that section 2025.620 precluded Sternick from reading the depositions of Department employees into the record.  The trial court granted the motion.

Second, the Diocese and Retreat Center moved to exclude expert testimony, presumably on the ground that Sternick failed to disclose any experts.[7]  The trial court granted the motion.

Third, the Diocese and Retreat Center moved to exclude evidence of any alleged non-economic losses.  The trial court granted the motion.

Fourth, the Diocese and Retreat Center moved to exclude evidence of Sternick's financial condition.  The trial court granted the motion.

Fifth, the Diocese and Retreat Center moved to preclude Sternick from offering opinions regarding credibility prior to final argument.  The trial court granted the motion.

---

[7] We have not been provided with a copy of the motion to exclude expert testimony.

5

Sixth, the Diocese and Retreat Center moved to preclude Sternick from violating the "Golden Rule" by inviting jurors to put themselves in her position. The trial court granted the motion.[8]

Sternick opposed the above-described motions in limine and filed two such motions of her own. First, Sternick moved to preclude the Diocese and Retreat Center from referring to their religious affiliation. The trial court denied the motion. Second, Sternick moved to preclude the Diocese and Retreat Center from referring to their financial condition and nonprofit status. The trial court granted the motion to exclude evidence of the Diocese and Retreat Center's financial condition but denied the motion to exclude evidence of their nonprofit status.

## E. *Jury Trial and Nonsuit*

A jury trial commenced on November 7, 2018. The Diocese and Retreat Center moved for nonsuit after Sternick's opening statement. The trial court denied the motion.

Sternick called herself as a witness and testified in narrative form. She also called Powell (the Retreat Center's caretaker), Bradley James Niven (an investigator with the Department), and Flores (one of the radio club members). As noted, we have not been provided with a reporter's transcript of the trial. We summarize relevant portions of the settled statement below.

At the close of Sternick's case in chief, the Diocese and Retreat Center moved for nonsuit a second time. The trial court denied the motion without prejudice. Following a discussion concerning ownership of the Retreat Center, the trial court reconsidered the ruling on the motion for nonsuit and granted the motion as to the Retreat Center only.

---

[8] The Diocese and Retreat Center also moved to exclude evidence regarding losses or damages related to Sternick's business, All Terrain Landscaping. The trial court denied the motion.

6

The next day, the trial court advised the parties that, "after much consideration," the court found "a lack of causation and grant[ed] the nonsuit as to all causes of action."

F.    *Settled Statement*

As noted, Sternick elected to proceed with a settled statement rather than a reporter's transcript. The settled statement asserts, inter alia, that the trial court erred in granting nonsuit because the evidence showed the Diocese and Retreat Center caused the fire.

The settled statement indicates that Sternick testified, in substance, that (1) the Diocese and/or Retreat Center leased land to an unidentified cattle owner, (2) Powell used pipes as an obstruction near the entrance of the pump house, (3) Alvarado and Flores took it upon themselves to construct a cattle barrier, and (4) "RADIO CLUB MEMBERS CAUSED A FIRE DURING [THE] CONSTRUCTION PROCESS." The trial court appears to have sustained objections to much of Sternick's testimony.

The settled statement offers the following summary of Nevin's testimony:

"FIRE[ ]INVESTIGATOR CAPTAIN BRADLEY NEVIN, TESTIFIED WHERE THE WORK WAS BEING CONSTRUCTED, THAT THE SURROUNDINGS WERE NOT CLEARED FOR FIRE IN HIS OPINION AS HE WAS 1ST INVESTIGATOR AT THE FIRE." The settled statement indicates the trial court sustained defense objections to a "FIRE INVESTIGATORS REPORT" for lack of foundation.

The settled statement indicates Powell testified, in substance, that: (1) he was the caretaker of the Retreat; (2) he rarely spoke with radio club members or visited the pump house; (3) the Diocese gave him a set of written rules governing the use of the Retreat Center, but the rules were written in English and did not address fire risks; and (4) when he arrived at the pump house on the day of the fire, radio club members told him, " 'ACCIDENT JOHN, []NO GOOD.' "

The settled statement does not offer a summary of Flores's testimony.

7

## II.  DISCUSSION

A.  *Motion for Nonsuit*

Sternick argues the trial court erred in granting nonsuit for lack of causation.[9]  "On review of a judgment of nonsuit, as here, we must view the facts in the light most favorable to the plaintiff.  '[C]ourts traditionally have taken a very restrictive view of the circumstances under which nonsuit is proper.  The rule is that a trial court may not grant a defendant's motion for nonsuit if plaintiff's evidence would support a jury verdict in plaintiff's favor.  [Citations.]  [¶]  In determining whether plaintiff's evidence is sufficient, the court may not weigh the evidence or consider the credibility of witnesses.  Instead, the evidence most favorable to plaintiff must be accepted as true and conflicting evidence must be disregarded.  The court must give "to the plaintiff['s] evidence all the value to which it is legally entitled, . . . indulging every legitimate inference which may be drawn from the evidence in plaintiff['s] favor . . . ." '  [Citation.]  The same rule applies on appeal from the grant of a nonsuit."  (*Castaneda v. Olsher* (2007) 41 Cal.4th 1205, 1214-1215.)

Sternick's negligence cause of action required a showing that the Diocese or Retreat Center caused her damages.  (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1145.)  "A tort is a legal cause of injury only when it is a substantial factor in producing the injury."  (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 572.)  " 'A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm.  It must be more than a remote or

---

[9] Sternick also challenges the trial court's grant of nonsuit as to the Retreat Center, apparently on grounds pertaining to ownership of the property.  We need not reach the merits of the trial court's initial ruling as to the Retreat Center, as we conclude the subsequent motion for nonsuit was properly granted as to all causes of action against both defendants.

trivial factor. It does not have to be the only cause of the harm. [¶] Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct.' " (*Raven H. v. Gamette* (2007) 157 Cal.App.4th 1017, 1025, quoting CACI No. 430; accord *In re Ethan C.* (2012) 54 Cal.4th 610, 640.)

The evidence appears to have been undisputed that Alvarado and Flores were the actual cause of the fire, i.e., the source of the activity or activities that caused the ignition. Although objections appear to have been sustained to much of her testimony, even Sternick appears to have acknowledged that "RADIO CLUB MEMBERS CAUSED A FIRE" in the course of their construction activities. Sternick does not challenge the seemingly undisputed evidence that Alvarado and Flores caused the fire. Instead, she suggests the Diocese and Retreat Center contributed to the spread of the fire by failing to clear vegetation from the property. This theory makes sense in the abstract, but Sternick offered no evidence to support it.

As noted, the trial court precluded Sternick from presenting expert opinion testimony. As a result, she was unable to present expert opinion evidence that negligent vegetation management increased her risk of harm. In the absence of any such evidence, Sternick was forced to rely on percipient witnesses. However, none of these witnesses appear to have testified to the Retreat Center's vegetation maintenance practices, and none appear to have observed any connection between the presence of uncleared vegetation at the Retreat Center and the spread of the fire to Sternick's property.[10] On the record before us, there was no evidence from which the jury could have reasonably

_____

[10] According to the settled statement, Nevin, the fire investigator, testified, "WHERE THE WORK WAS BEING CONSTRUCTED, THAT THE SURROUNDINGS WERE NOT CLEARED FOR FIRE IN HIS OPINION." Nevin's testimony, as here described, shows only that the area was not optimized for preventing fires from construction activity. It does not support an inference that the Diocese or Retreat Center failed to conduct necessary maintenance, or that any such failure of maintenance contributed to the spread of the fire.

9

inferred that the Diocese and Retreat Center failed to properly maintain vegetation at the Retreat Center, or that any such failure contributed to the spread of the fire to Sternick's property.

Sternick offers an alternative theory of liability. She suggests the Diocese and Retreat Center caused her damage by breaching a duty to prevent the dangerous activities of Alvarado and Flores. She points to evidence that the gates to the Retreat Center were always open, allowing radio club members to come and go as they pleased. She also points to evidence that the Diocese had rules regarding the use of the Retreat Center, but the rules were 20 years old and failed to appreciate current fire risks. She also notes that the rules were written in English and may have been hard for the Spanish-speaking members of the radio club to understand. This evidence does not support an inference that the Diocese or Retreat Center breached a duty of care to Sternick.

When analyzing the possible duty a defendant may owe a plaintiff with respect to harm at the hands of third parties, courts distinguish between "misfeasance"—meaning the defendant has acted affirmatively in a way that "created a risk" of harm at the hands of a third party—and "nonfeasance"—meaning " 'the defendant has failed to aid plaintiff through beneficial intervention.' " (*Melton v. Boustred* (2010) 183 Cal.App.4th 521, 531, citing *Weirum v. RKO General, Inc.* (1975) 15 Cal.3d 40, 49.) This distinction is important, because, as a general rule, one "who has not created a peril is not liable in tort merely for failure to take affirmative action to assist or protect another" from acts of a third party. (*Williams v. State of California* (1983) 34 Cal.3d 18, 23; see *Pamela L. v. Farmer* (1980) 112 Cal.App.3d 206, 209 ["a person should not be liable for 'nonfeasance' in failing to act as a 'good Samaritan' "].) By contrast, if a defendant "create[s] an unreasonable hazard," which facilitates harm at the hands of third parties, such misfeasance may support a duty to protect the plaintiff against such harm, even though "third parties were the immediate cause of the . . . injury." (*Garcia v. Paramount Citrus Assn., Inc.* (2008) 164 Cal.App.4th 1448, 1453, fn. 3.) A defendant may also owe

10

an affirmative duty to protect another from the conduct of third parties if he or she has a "special relationship" with the other person. (*Melton v. Boustred, supra,* at pp. 531-532.)

Nothing in the record suggests the Diocese or Retreat Center had a special relationship with Sternick or engaged in affirmative conduct that increased the risk of harm to her. Although the Diocese and Retreat Center allowed members of the radio club to use the property, nothing suggests they "created a peril" (*Williams v. State of California, supra,* 34 Cal.3d at p. 23; see *Pamela L. v. Farmer* (1980) 112 Cal.App.3d 206, 209), by engaging in "active conduct that increased the risk of harm" to Sternick. (*Melton v. Boustred, supra,* 183 Cal.App.4th at p. 533). So far as the settled statement reveals, Sternick presented no evidence that the club's ordinary activities were inherently dangerous or posed an inevitable fire risk. Nor does Sternick appear to have presented evidence that the Diocese or Retreat Center authorized or approved of Alvarado and Flores's construction efforts. Indeed, nothing suggests anyone from the Diocese or Retreat Center knew about Alvarado and Flores's attempt to construct a cattle barrier. On the record before us, there was no substantial evidence that the Diocese or Retreat Center engaged in affirmative conduct that increased the risk of harm to Sternick. Nonsuit was properly granted.

B.    *Coordination of Related Cases*

Sternick next challenges the trial court's decision to "coordinate" the present case with the *Nordstrom*, *Cal Fire*, and *McDonald* cases (together, the related cases). She suggests the trial court acted in excess of its authority in coordinating the related cases because (1) no coordination petition was filed (§ 404 [establishing procedures for coordinating civil actions sharing common questions of fact or law]), and (2) the court failed to comply with rule 3.400 [setting forth definitions for complex cases].) She also argues, somewhat inconsistently, that the trial court erred in *terminating* the allegedly improper coordination on the eve of trial. These purported procedural maneuvers were a problem, Sternick says, because she was planning to use evidence developed in the *Cal*

11

*Fire* and *McDonald* cases to prove her case but was prevented from doing so. Sternick's confusing argument lacks merit.

It is true, as Sternick observes, that the trial court used the word "coordinated" to describe the relationship between the related cases. However, we do not believe the trial court intended to "coordinate" the related cases within the meaning of section 404. The trial court does not appear to have considered any petition for coordination (as Sternick also observes), and the statutory procedure for coordinating cases from different courts would not seem to apply here in any event. (§ 404; Wegner, et al., Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group 2020) ¶ 4:432.10 ["When separate lawsuits have common issues of law or fact, the court may order them *consolidated* or *coordinated* for trial. (Consolidation involves cases pending in the *same* court; coordination involves cases pending in different courts)"].) We do not presume the trial court erroneously coordinated the related cases pursuant to an inapplicable statute. (See *Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.) It seems to us more likely that the trial court intended to order the cases related pursuant to rule 3.300. (See 4 Witkin, Cal. Procedure (5th ed. 2020) Coordination of Related Cases, § 375, [describing procedure for ordering cases related under rule 3.300].) We need not resolve this mystery, however, as it is undisputed that the related cases were no longer "coordinated" (if they ever were) by the time of trial. This brings us to Sternick's argument that the trial court improperly terminated the purported coordination.

Sternick argues without citation to the record that the trial court took some sort of action with respect to the purported coordination on the eve of trial. But the record reflects no such action, and Sternick's representations to the trial court in this case and judicially noticeable records in the other related cases indicate that the *Nordstrom* and *Cal Fire* cases had been resolved months before. The *McDonald* case, by contrast, does not appear to have been at issue. The trial court could not have caused any of these developments, even assuming the related cases had previously been erroneously

12

coordinated. Furthermore, though Sternick implies she was blindsided on the eve of trial, her renewed motion to reopen discovery made clear that she knew the *Cal Fire* case would not be going forward well before her own trial date.

Ultimately, however, Sternick's arguments concerning the purported coordination or lack of coordination of the related cases appear to rest on the notion that she should have been able to draft behind the plaintiffs in the other related cases, using their evidence to prosecute her separate claims against the Diocese and Retreat Center. Sternick maintains that she enjoyed cooperative relationships with attorneys for the plaintiffs in the *Cal Fire* and *McDonald* cases, and she planned to use deposition transcripts and exhibits from those cases in her own case-in-chief. This strategy might have made sense had the related cases been consolidated in some fashion (§ 1048, subd. (a)), but nothing suggests consolidation was ever on the table, and no reasonable attorney would have believed that she could rely entirely on deposition transcripts and exhibits from other cases in presenting and proving her own independent action.[11] That Sternick erroneously believed she could present her case in tag-along fashion does not establish error by the trial court. (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984-985 ["Except when a particular rule provides otherwise, the rules of civil procedure must apply equally to parties represented by counsel and those who forgo attorney representation"].)

C. *Evidentiary Challenges*

Finally, Sternick challenges many of the trial court's evidentiary rulings, including most of the court's rulings on the parties' motions in limine. We typically review a trial court's evidentiary decisions for abuse of discretion. (*Twenty-Nine Palms Enterprises v. Bardos* (2012) 210 Cal.App.4th 1435, 1447.) When a motion in limine is used to dispose of an entire cause of action, we apply a more rigorous standard of review, with inferences

---

[11] Indeed, the Diocese and Retreat Center's attorney tried to warn her against such a strategy.

13

and conflicts of evidence resolved in favor of the nonmoving party. (*Kinda v. Carpenter* (2016) 247 Cal.App.4th 1268, 1279-1280.)

    1.    *Motions in Limine as Dispositive Motion*

Sternick argues the Diocese and Retreat Center improperly used their motions in limine as a substitute for a dispositive motion. We accept the premise that motions in limine should not replace dispositive motions prescribed by the Code of Civil Procedure, such as motions for summary judgment. (*Johnson v. Chiu* (2011) 199 Cal.App.4th 775, 780-781; *Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1594.) But nothing in the record suggests that anything like that happened here.[12]

The Diocese and Retreat Center's motions in limine succeeded in precluding Sternick from presenting expert opinion evidence and reading certain deposition transcripts into the record. As far as we can tell from the incomplete record, the motions operated only to exclude particular evidence, including evidence that was already excluded by reason of the trial court's discovery rulings. Nothing in the record suggests that any of the motions called upon the trial court to evaluate all of Sternick's evidence or determine whether, without the excluded evidence, she would be unable to prove her case. (See *Amtower v. Photon Dynamics, Inc., supra,* 158 Cal.App.4th at pp. 1593-1594 [observing that some courts "have also used the in limine process to examine the sufficiency of the evidence"].) Although Sternick would later prove unable to show causation without expert opinion testimony, there does not appear to have been any evidentiary proceeding or formal motion establishing this was the case. On the record before us, the trial court can only be said to have enforced the discovery rulings dealing with Sternick's failure to disclose experts. No error appears.

---

[12] As noted, we have not been provided with a copy of the Diocese and Retreat Center's motion to exclude expert testimony.

14

2.    *Use of Depositions*

Sternick also challenges the trial court's in limine ruling precluding her from reading transcripts of depositions taken in other cases into the record. We perceive no error.

Under Evidence Code section 1291, subdivision (a)(2), subject to certain conditions not relevant here, previously recorded testimony may be offered at trial only if the deponent is unavailable as a witness. Section 2025.620, subdivision (b) establishes an exception to this rule in that it allows the deposition of a party or one who was an employee of a party at the time the deposition is taken to be used at trial against the other party, whether or not the deponent is available.

Sternick complains that the trial court's in limine ruling precluded her from reading deposition transcripts from the *Cal Fire* and *McDonald* cases into the record.[13] She does not suggest she was improperly precluded from reading the deposition transcript of a party to the present action or an employee of a party. Instead, she suggests that section 2025.620 should not apply to depositions taken in the *Cal Fire* and *McDonald* cases because the related cases were coordinated in some fashion. Although not entirely clear, she appears to argue that the purported coordination turned the related cases into a single consolidated case with an expanded roster of parties. This argument, to the extent we understand it, flies in the face of Sternick's previously discussed argument that the trial court improperly terminated the purported coordination on the eve of trial. Regardless, we reject Sternick's contention that the related cases were formally coordinated, or that the purportedly coordinated cases morphed into a consolidated case,

_____

[13] Sternick argues without citation to the record that the trial court "Prejudicially Eliminated Evidence of Witness testimony of Brad McDonald." We understand Sternick to mean that the trial court precluded her from reading McDonald's deposition testimony into the record.

15

such that the parties to each related case all became parties to the same case. We find no trace of any such metamorphosis in the record, and no basis for concluding the trial court abused its discretion in granting the motion in limine.

### 3. *Cal Fire Report and Alvarado Statement*

Sternick argues the trial court erroneously excluded a report prepared by the Department (the Cal Fire report), and a witness statement given to Nevin by Alvarado (the Alvarado statement). We are not so sure. The record indicates the trial court marked the Cal Fire Report and Alvarado statement for identification, found a lack of foundation as to both records, and refused to receive either into evidence. Without a reporter's transcript, we have no way of determining whether the trial court erred. Because Sternick failed to provide an adequate record, the claim of error must be resolved against her.

### 4. *Other Motions in Limine*

Finally, Sternick offers scattershot challenges to the trial court's rulings on the Diocese and Retreat Center's other successful motions in limine (namely, the motions to exclude expert opinion testimony and evidence of Sternick's alleged non-economic losses and financial condition, and preclude Sternick from offering opinions regarding credibility and violating the Golden Rule). Sternick also challenges the trial court's rulings on her unsuccessful motions to preclude the Diocese and Retreat Center from referring to their religious affiliation or presenting evidence of their nonprofit status. These challenges are largely unintelligible. They are frequently presented without citations to the record or coherent sequential headings (see rule 8.204(a)(1) [requiring briefs to "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record" and "[s]tate each point under a separate heading or subheading"]) and entirely unsupported by reasoned legal analysis or pertinent authority.

As appellant, Sternick has the burden to present argument supported by relevant legal authority as to each claim of error. Satisfaction of this requirement involves more than simply stating a bare conclusion that the trial court's rulings were wrong, in whole

16

or in part, and leaving it to the appellate court to figure out why. It is not our role to construct theories or arguments that would undermine the judgment and defeat the presumption of correctness. (*Niko v. Foreman* (2006) 144 Cal.App.4th 344, 368.) "When an issue is unsupported by pertinent or cognizable legal argument it may be deemed abandoned and discussion by the reviewing court is unnecessary." (*Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699-700.) Sternick's self-represented status does not relieve her of her obligation to present intelligible argument supported by the record and applicable legal authority. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246-1247.) We deem Sternick's remaining challenges to the trial court's in limine rulings to be forfeited and decline to address them further. (*Evans v. Centerstone Development Co.* (2005) 134 Cal.App.4th 151, 165.)

### III. DISPOSITION

The judgment is affirmed. Respondents are entitled to recover their costs on appeal. (Rule 8.278(a)(1) & (2).)

/S/

RENNER, J.

We concur:

/S/

MAURO, Acting P. J.

/S/

HOCH, J.

17